## O'Neil v. Garrett.

The vendor's right of stoppage *in transitu*, continues until the goods have
reached the buyer. When the transit is at an end, the delivery is com-
plete, and the right of stoppage gone; but until the goods have reach-
ed their place of ultimate destination, as agreed upon by the buyer
and seller, they are ordinarily liable to stoppage.

The right remains not only while the goods are in motion, and not only
while they are in the hands of the carrier, but while they are in the
hands of a warehouse-man, or place of deposit, connected with their
transmission or delivery; or in any place not actually or constructive-
ly the place of the consignee, or not so in his possession or under his
control, that the putting them there, implies the intention of delivery.

A delivery to a warehouseman, or wharfinger, at the place of the ulti-
mate destination of the goods, who does not receive them as the mere
agent of the buyer, but in the ordinary course of his business as a
middle man, is not a constructive delivery to the purchaser, so as to
put an end to the right of stoppage *in transitu.*

The vendor's right of stoppage *in transitu*, is not divested by the levy of
an attachment against the purchaser of the goods, before they come
into his possession. The vendor has the preference over the legal pro-
cess of a general creditor, although but for the suit, the goods would
have fallen into the hands of the vendee.

Where in an action of replevin by a vendor, to recover the possession of
goods sold on credit, the vendee having become insolvent before deliv-
ery, against a sheriff, who claimed to hold the goods under attach-
ments against the vendee, the plaintiffs asked the court to instruct the
jury as follows: "That if O. & C., (warehouse-men), received the
goods from the railroad company, in the usual course of their busi-
ness as commission merchants, for storage, and not as the agents of
H., (the vendee), and had no authority from H. to receive the goods,
and were not the agents of H., then the right of stoppage *in transitu*
was not determined, and plaintiff had a right to stop them by writ
of replevin, provided the said H. became insolvent before the arrival
of the goods, and after he purchased them," which instruction was re-

fused; *Held*, That the court erred in refusing the instruction.

And where in such an action, the court instructed the jury as follows: 1. "That if the goods were delivered to O. & C., and were held by them subject to the order of H., and were attached by defendant in a suit against H., before plaintiff claimed and got possession of the goods, then the attaching creditors of H. will hold said goods as against the plaintiff in this suit;" *Held*, That the court erred in giving the instruction.

*Appeal from the Des Moines District Court.*

WEDNESDAY, OCTOBER 13.

This is an action of replevin to recover the possession of five barrels of ale, commenced before a justice of the peace, and appealed to the district court. The defendant claimed to hold the property as sheriff of Des Moines county under, and by virtue of, certain writs of attachment in his hands, against one Holmes.

On the trial of the cause before a jury, the plaintiff proved that one J. J. Holmes purchased the ale in controversy, of plaintiff, on credit; that Holmes became insolvent before the arrival of the ale at East Burlington, the terminus of the Chicago and Burlington railroad; that the ale arrived at East Burlington, Illinois, on the east bank of the Mississippi river, opposite Burlington, Iowa, by the Chicago and Burlington railroad, consigned to said Holmes, Burlington, Iowa; that it lay there unclaimed several days; that one Tedford, the agent of plaintiff, went to the freight agent of the said railroad, and told him said Holmes had become insolvent, and to retain the ale for plaintiff; that said agent, finding that attachments were about to be issued against said Holmes, to save litigation to the railroad company, sent the ale over to Ogden & Copp, commission merchants at Burlington, Iowa, who received it, and paid the charges; that Ogden & Copp had no authority from Holmes to receive his goods, nor did said Holmes know that they were in the possession of said Ogden & Copp; that said Ogden & Copp received

the ale as they did other goods, for Burlington and other places west, subject to Holmes' order, but without any instructions from him, and so held them at the time they were replevied. It also appeared from the testimony of Tedford, the agent of the plaintiff, that he was, at the date of the replevin of the ale, and for some time previous had been, acting as plaintiff's agent, in posting him as to the credit and responsibility of his customers in Burlington, and in stopping goods which arrived after the debtor failed; that in this case, he had written special authority by letter to stop the ale; that at the time he spoke to the agent of the company, at East Burlington, he told the agent to hold the goods until he could write to Chicago, for written authority to take possession of the ale; and that he did not get the written authority to replevy the ale, until after it had been stored in the warehouse, in the city of Burlington, Iowa, and after it had been attached.

The defendant then introduced evidence to prove the value of the ale, and that it was attached by him while in the possession of Ogden & Copp, before the replevin, under writs of attachments against said Holmes; and that he did not remove the ale, but took Ogden & Copp's receipt therefor, and left it with them.

The plaintiff asked the court to instruct the jury as follows: "That if Ogden & Copp received the goods from the railroad company, in the usual course of their business as commission merchants, for storage, and not as the agents of Holmes, and had no authority from Holmes to receive the goods, and were not the agents of Holmes, then the right of stoppage *in transitu* was not determined, and plaintiff had a right to stop them by writ of replevin, provided the said Holmes became insolvent before the arrival of the ale, and after he purchased it"—which instruction the court refused to give. At the request of the defendant, the court then instructed the jury as follows:

I. That if the ale was delivered to Ogden & Copp, and was held by them subject to Holmes' order, and was at-

tached by defendant, in a suit against Holmes, before plaintiff claimed and got possession of it, then the attaching creditors of said Holmes, will hold said ale as against the plaintiff in this suit.

II. That if the ale had reached its place of destination, and was attached before the vendor had asserted his claim, or right to take possession of the same, then the defendant will be entitled to recover in this suit.

The plaintiff excepted to the refusal of the court to give the instruction asked for by him, and also to the giving of those requested by the defendant. A verdict having been returned for the defendant, and judgment rendered thereon, the plaintiff appeals, and assigns for error, the refusing to give the instruction requested by him, and in giving those asked by the defendant.

*Starr, Phelps & Robertson,* for the appellant.

The sole question is, was the right of stoppage *in transitu* determined? We understand the law to be, that the right is determined only by a delivery to the consignee, or his general or special agent. Chitty on Contracts, (8th American Edition), 378 ; Story on Con., 820, 1, 2. Where the consignor has designated a certain consignee, to whom he wishes the goods delivered, the right is gone, upon delivery to that person. But there was no such direction in this case.

Again: Ogden & Copp merely received the ale as agents of the railroad company, and there was no privity between them and Holmes, nor could the railroad company, after notice, deprive the plaintiff of his right of stoppage, by delivering them even to Holmes himself. Chitty on Cont., 381, where the author says : " It is not necessary in order to the proper exercise of the right of stoppage *in transitu,* that the consignor should obtain actual possession of the goods ; but it is sufficient, if he give notice of his claim to the person in whose custody they are during the transit ; and if such notice be given whilst the goods are

*in transitu*, a subsequent delivery thereof to the consignee, by the carrier or wharfinger, will not entitle even the assignees of the consignee to hold them." See, also, 2 Espinasse Rep., 613 ; *Northey et al.* v. *Fields*, 2 Espinasse, 613 ; *Mills et al.* v. *Ball*, 2 Bosanquet & Pullen, 457. These two cases are directly in point. *Buckley* v. *Furniss & Stickney*, 17 Wend., 505; 15 Ib., 137 ; 1 Parsons on Conts., 482. The ale had, in no sense, come into the possession of the vendee.

The attachment did not divest plaintiff of his right of stoppage. 17 Wend., 505.

*Browning & Tracy*, for the appellee. [No brief of the counsel for the appellee was found upon the files.]

STOCKTON, J.—The vendor's right of stoppage *in transitu* continues until the goods have reached the buyer. When the transit is at an end, the delivery is complete, and the right of stoppage gone. But until the goods have reached their place of ultimate destination, as agreed upon by the buyer and seller, they are ordinarily liable to stoppage. The right remains, not only while the goods are in motion, and not only while they are in the hands of the carrier, but also while they are in the hands of a ware-houseman, or place of deposit connected with their transmission or delivery. *Covell* v. *Hitchcock*, 23 Wend., 611. Or in any place not actually or constructively the place of the consignee, or not so in his possession or under his control, that the putting them there implies the intention of delivery.

A delivery to a ware-houseman or wharfinger, at the place of the ultimate destination of the goods, who does not receive them as the mere agent of the buyer, but in the ordinary course of his business as a middle-man, is not a constructive delivery to the purchaser, so as to put an end to the right of stoppage *in transitu*. *Edwards* v. *Brewer*, 3 Meason & W., 375. So, where the goods had been delivered to an agent of the buyer, who delivered them to a forwarding house for shipment, and they came

to the hands of other forwarders; yet the right of stoppage was held to continue. *Hays* v. *Monille*, 2 Harrison, 48.

The only question in this case is, whether the delivery of the goods by the railroad company to Ogden & Copp, was a constructive delivery to Holmes, the buyer and consignee. We do not think that it was. The plaintiff had notified the railroad company that Holmes was insolvent, and of their claim to stop the goods, whilst they were upon the east bank of the Mississippi river, and before they had been placed in the possession of Ogden & Copp. Ogden & Copp were warehousemen, who received the goods as they did other persons' goods, from the company for forwarding, paying the freight and charges upon them, and holding them subject to Holmes' order. They had no authority from Holmes to receive the goods; they had never been his agents, or received goods for him before; Holmes did not know the goods were in their possession.

Under these circumstances, it seems to us, that Ogden & Copp were the agents neither of the plaintiff nor of Holmes; and neither for the custody nor for the transmission of the goods. The railroad company having been notified of plaintiff's claim to stop the goods on account of the insolvency of Holmes, and having in consequence placed them in the possession of Ogden & Copp, as warehousemen, the latter held them for the railroad company, and their possession was the possession of the company, who had no right to part with the goods after the notice from Holmes, except to deliver them to him. There is nothing in the evidence from which it can be implied, that the delivery to Ogden & Copp was an intended delivery to Holmes. They were subject to the order of Holmes in the possession of Ogden & Copp, only in the same sense that they were subject to his order in the hands of the carrier. The company could not defeat the right of stoppage, by delivering the goods to a warehouseman, not the agent

of the buyer.   It was not a constructive delivery to Holmes.

As to the effect of the levy upon the goods by the defendant, Garrett, as sheriff, by virtue of an attachment at the suit of a creditor of Holmes, there can be no doubt but that the plaintiff's right as vendor is not divested by the levy before the goods came into the possession of the buyer. The plaintiff has the preference over the legal process of a general creditor, although, but for the suit, they would have fallen into the hands of the vendee, Holmes.   *Covell* v. *Hitchcock, supra;  Buckley* v. *Furness*, 15 Wend., 137.; Ib., 144 ;  *Naylor* v. *Dennie*, 8 Pick., 198 ;  17 Wend., 505 ; *Sawyer* v. *Joslin*, 20 Vermont, 172 ;  *House* v. *Judson*, 4 Dana, 11 ;  *Cox* v. *Burns & Rentgen*, 1 Iowa, 64.

The district court erred in refusing to give the instruction to the jury, asked by the plaintiff, and in giving the first instruction asked by the defendant.   There was error also in the second instruction asked by the defendant and given by the court, in awarding a preference to the attaching creditor, who seized the goods in the possession of the warehousemen, over the vendor, who asserts his rights of stoppage before they reached the buyer.   The goods, in this instance, had not reach their destination, by being placed in the possession of Ogden & Copp, who were in no sense the agents of Holmes.   *Cox* v. *Burns & Rentgen*, 1 Iowa, 64.

The judgment will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.