WILLIAM R. CLARK AND ANOTHER *v.* JAMEL LYNCH, SHERIFF, &c.

The plaintiffs shipped from Boston to C. at New York, certain goods to be paid for "on arrival." On the arrival of the goods in New York, but before they had been delivered to C., and while they were in the possession of the carrier, they were levied on by the sheriff under an attachment issued to him in an action against C. *Held,* that as the goods had never come into the possession of C., no title thereto had passed to him or to any one claiming in his right, and the sheriff acquired no title by the attachment.

*Held,* also, that as C. had, previous to this purchase or immediately after, failed in business, of which fact the plaintiffs were ignorant when they shipped the goods, they had a right, in default of payment of the price, to reclaim the goods from the carrier or from the hands of any creditor or voluntary assignee of the purchaser, merely acting in his behalf or in the exercise of such rights as he possessed.

*Held,* also that the plaintiffs had a right to reclaim the goods by the power of stoppage *in transitu,* since the power which a purchaser of goods has of taking possession of the goods from the hands of the carrier, and thus determining the right of stoppage *in transitu,* cannot without his direct intervention be exercised by or on behalf of a creditor by way of attachment or levy upon his interest.

Clark v. Lynch.

APPEAL by the defendant from a judgment entered on the verdict of a jury. The action was brought to recover damages for the conversion of personal property. The facts were as follows: The plaintiffs, merchants in Boston, upon the order of one John Curtis, a merchant in New York, on the 25th day of April, 1864, sold to him 10 tierces of salmon, the property in dispute, at $40 per tierce, and shipped them to him by the Old Colony and Fall River Railroad Corporation, common carriers, taking a receipt therefor, expressing that the goods were to be delivered to John Curtis or his order, at the depot of the company in New York, on payment of freight.

The sale was " a cash sale " in the regular course of business between the parties and on the promise of the purchaser to pay on arrival.

After the goods arrived in the city of New York, and while they were still on the wharf of the common carriers, they were attached and taken possession of by the defendant under an attachment issued to him out of the Supreme Court of this State, at the suit of a creditor of Curtis, for an amount exceeding the value of these goods, and on taking such possession, he paid the freight from Boston. Curtis had failed in business in the time which intervened between his order and the arrival of the goods, and never attempted to exercise any control over them.

On the 2d of May, plaintiffs, apparently ignorant of the attachment, wrote him saying that they had heard he was in difficulty in his business; that they were looking for a check for the bill as promised, and added : " You know, to buy goods and let them go to your creditors would not be right, and we have confidence you will pay us." On the 20th of May, Curtis wrote them, saying, " Can't you fix some way to say, you sent me those tierces of salmon to sell on commission? Then I could turn them over to you on your claim against them. I will pay you the balance as soon as I can. This handles me kind of rough, but will have to pay for it. My lawyer says that if you can say you sent to me to sell on commission, that you can have them." They, in their reply, dated May 21st, 1864, stated, " We don't consider the 10 tierces of salmon yours, and shall claim them as consigned goods on commission."

They also direct him to a lawyer to act for them and to take possession of the salmon, and say "all you need say is that you consider them our property." On the same date, they wrote him another letter as follows: "We sent you ten tierces of salmon to sell for us, and we claim they are our property. You will please hand them over to Messrs. Jed, Fry & Co. on our account, and we will hold you harmless. You know they are not yours, and no one has any claim on them. You must not allow other parties to get our property."

On the 25th of May, following, plaintiffs gave defendant notice that the goods were their property. The defendant, nevertheless, asserted his right to take and to retain the goods, under the attachment above mentioned, as well as several others subsequently issued to him against the property of Curtis.

Upon the trial, a verdict was rendered in favor of plaintiffs for the value of the goods.

Defendant appealed to the court at general term.

*A. J. Vanderpoel*, for appellant.

*F. R. Sherman*, for respondents.

By the Court.*—Robinson, J.—The payment of the price for these goods was to be made " on arrival " of the goods in New York, and it cannot be doubted, that while they remained in the custody of the common carriers, on their wharf in New York and in course of transit, the purchaser having failed, the plaintiffs (the vendors) not having been paid, were legally entitled to reclaim possession of the goods. No possession having been taken by the purchaser, no title could pass to any one claiming in his right, until payment on arrival was made. The right to such payment had in no manner been waived, either by having suffered the goods to go into the control of the purchaser, or by allowing him time for payment. The right, as owners, existed in the plaintiffs when the goods were seized

---

* Present, Robinson, Loew and J. F. Daly, JJ.

by the defendant, and when notice was given him of their title to the goods (*Hicks* v. *Cleveland,* 39 Barb. 573).

The question as to the right of stoppage *in transitu* is not presented by the case, but one solely of the right of the vendors to reclaim their property while in the hands of common carriers of goods, when, by the executory contract of sale in pursuance of which they were shipped, the price was to be paid on arrival, and no payment was made or offered.

But, without regard to this question of the absence of any title in the purchaser, until payment on arrival, he had, previous to this purchase, or immediately after, failed in business, of which fact the plaintiffs were ignorant when they shipped the goods, and for this reason they had a right, in default of payment of the price, to reclaim the goods from the common carriers or from the hands of any creditors or voluntary assignees of the purchaser, merely acting in his behalf or in the exercise of such rights as he possessed. The ruling of the judge on the trial, in this respect, was correct, and the verdict should be upheld. But if the right of the plaintiffs to reclaim the goods was merely that of stoppage *in transitu,* it was in that respect perfect.

The purchaser had never acquired actual or constructive possession of the goods, and after being apprised of their seizure by the defendant, did not act so as to confirm such possession, but, on the contrary, did his utmost to protect the interests of the plaintiffs, even to suggesting they should untruly claim the goods had been sent him for sale on commission ; to which they unscrupulously yielded. Such act, however, did not mislead any one, and it cannot be denied that the plaintiffs, as against the purchaser, had a right to regain the possession of the goods. Defendant, however, claims that their power to reclaim them had been destroyed by his having taken possession of the goods under the attachment against the purchaser, and, as legal representative or assignee *in invitum* of his rights ; and also, that any such special lien for the unpaid purchase money was waived by plaintiff's demand of the goods, instead of the amount of the lien on them for the unpaid purchase money.

The right of stoppage *in transitu* is not strictly one of lien, although frequently styled one of *equitable lien,* because possession of the goods having been surrendered to the common carrier for delivery to the vendee, without condition or restriction in favor of the vendor, he is neither actually nor constructively agent for the latter. The right is not to *retain,* but to *regain,* possession, and where it exists and is asserted, the title to the property and right to its *possession* is reinvested in the person in whom such right of stoppage exists (Story on Sales, §§ 284, 319).

The power which the purchaser has of taking possession of the property from the hands of the common carrier, and thus determining the right of stoppage *in transitu,* cannot, it seems, without his direct intervention, be exercised by or on behalf of a creditor by way of levy under attachment upon his interest. " The vendor's power of intercepting the goods is the elder and preferable lien, and is not superseded by the attachment." The process does not proceed on the ground of defeating this prior right, but simply to acquire such as was already vested in the debtor, and his voluntary assignment made with knowledge that the purchaser is unable to pay for the goods, is fraudulent as against such rights of the vendor (*Smith* v. *Gross,* 1 Camp. 282; 2 Kent Com. 551; *Harris* v. *Pratt,* 17 N. Y. 249).

*Buckley* v. *Furniss* (15 Wend. 137), is very similar, in all its features, to the present case, and maintained the principle that such right was not divested by an attachment or seizure of the goods at the suit of a creditor of the purchaser before the *transitus* or delivery into the actual or constructive possession of the vendee was at an end, and that the officer and attaching creditor were trespassers. The claim made in that case, by the sheriff, on the part of the attaching creditor, to exercise the right of a debtor to extinguish the right of stoppage *in transitu* and to take absolute possession of the property, although not presented (so far as shown by the report) for distinct consideration, was, in effect, negatived by the decision in that case, and would seem unsustainable on principle.

The circumstances of a sale on credit, and delivery to a common carrier, qualified by the right of reclamation, in case

of the failure of the purchaser, not only reserve the right of stoppage *in transitu* to the vendor, but leave a *locus pœnitentiæ* to the debtor (his possession being incomplete) to decline to be guilty of accepting the property from the common carriers with knowledge of his inability to pay for it. He may (as did the vendee in this case) refuse to accept the goods, and in doing all he could to restore them to the vendor (as was said in *Stuyvesant* v. *Orser*, 24 N. Y. 544), "he acted with honesty which ought to be encouraged and commended, not overreached and nullified, by technical rules at variance with equity and common justice."

These terms of commendation cannot be fully applied to the parties to the purchase of the property in controversy, as their private correspondence showed a want of integrity, in their readiness to resort to subterfuge and falsehood; but as such demonstration in no way influenced the action of the defendant, it cannot be held to vary or modify the rights in the property in question which then existed, and which have in no manner been waived or released.

A purchaser of property *in transitu*, by his omission to take possession or to pay the purchase money, defeats the right of his creditor's attachment as against the vendor's right of stoppage *in transitu* and reclamation of the goods.

The creditor can only make his process available by payment of the purchase money.

These views were most ably presented in the decisions and charge of the learned judge on the trial, and no error is discovered in the matter of any of the exceptions taken which should require a new trial.

The judgment should be affirmed with costs.

Judgment affirmed with costs.