## A. B. Symns & Co. v. Wm. Schotten & Co.

1. Stoppage, *in Transitu.* The vendor's right of stoppage *in transitu* continues not only while the goods are being carried to the point of destination, but also until they have actually reached the possession of the vendee.

2. Implication — *Goods in Transit.* Where the goods are removed by the railroad company and placed in its warehouse in its capacity as carrier to await payment of the freight charges and a delivery to the vendee, the implication of the law is, that the goods are still in transit and subject to the vendor's right of stoppage.

### Error from Lyon District Court.

Action begun by *A. B. Symns & Co.* to recover from the Emporia Mercantile Association $185.05, for merchandise sold and delivered to the defendant. At the same time the plaintiff caused an attachment to be issued and levied upon certain goods which were found in the possession of the A. T. & S. F. Rld. Co., and which had been shipped to the defendant over its road. Afterward, *Wm. Schotten & Co.* intervened in the action, claiming that the attached goods were purchased from them by the Emporia Mercantile Association on credit, and that after they were shipped and before delivery, the de-

fendant became insolvent. Notice of these facts was given to the railroad company, and they demanded the goods under the right of stoppage *in transitu*. By reason of the notice and demand, Wm. Schotten & Co. claimed the goods, while the plaintiff claimed them under the attachment proceedings. Default was made by the Mercantile Association, and the cause was tried between the other parties, upon the following agreed statement of facts:

"It is hereby stipulated and agreed between plaintiffs and Wm. Schotten & Co. that the following are the facts in this case, so far as these two parties are concerned:

"1. Both said parties are copartners as alleged.

"2. The bill of goods in controversy, viz., 10 cases of coffee, 1-lb. packages, Philadelphia, $155; 1 drum of keg Y pepper, Philadelphia, $15; 10 lbs. hops, Philadelphia, $3.50— $173.50, were ordered by said defendant, the Emporia Mercantile Association, just previous to October 16, 1883, of Wm. Schotten & Co., and on October 16, 1883, sold by Wm. Schotten & Co. on said order to said association, and by Wm. Schotten & Co., who then were and now are wholesale merchants at St. Louis, Mo., shipped by railroad and common carriers from the city of St. Louis, to the city of Emporia, Lyon county, Kansas, consigned to said association there, a corporation doing a retail grocery business at Emporia, aforesaid. The Atchison, Topeka & Santa Fé Railroad Company was and is a common carrier for the last and western part of the lines of railroad over which said goods were shipped. Said goods arrived at the depot of the A. T. & S. F. Rld. Co. at Emporia on October 22, 1883. They were unloaded and taken out of the cars in which they came and were placed in the warehouse of the railroad company, and on October 23, 1883, the attachment in this suit was issued and the notice of garnishment issued and both served on the same day.

"3. The A. T. & S. F. Rld. Co. declined to recognize the attachment, and refused to deliver possession of said goods to the sheriff, and never did part with the possession thereof until November 29, 1883, as appears in finding No. 6, except as shown by finding No. 9.

"4. On October 25, 1883, the agent of the A. T. & S. F. Rld. Co. notified Wm. Schotten & Co. of such suit, and closed the notice in these words: 'And we demand that you take such steps to enforce and protect your rights in said action as

to you may seem proper.— R. E. Torrington, Agt. A. T. & S. F. Rld.'

"5. On October 27, 1883, Wm. Schotten & Co. sent to their attorneys, Buck & Feighan, the bill attached to their answer, and directed them to claim the said goods, and pursuant to said instructions on November 1, 1883, Buck & Feighan, for Wm. Schotten & Co., found said goods in the warehouse of the A. T. & S. F. Rld. Co. at Emporia, Kansas, and then and there informed said company that said association had become insolvent, and had not paid for said goods, and that they claimed the goods by their right of stoppage *in transitu*, and then and there demanded said goods and warned said railroad company not to deliver them either to said association or the said sheriff, or anyone else.

"6. On November 29, 1883, all the parties hereto and said railroad company stipulated for sale of goods, the proceeds to be held in place of the goods, as appears by written stipulation on file herein, and said railroad company then and there delivered said goods to Thomas & Jones, who paid therefor $152, and paid thereon railroad freight and charges $8.88, leaving net proceeds in the sum of $143.12, to be disposed of under said claims of the said A. B. Symns & Co. and Wm. Schotten & Co.

"7. Between the time of said sale and said attachment, said association became, and ever since has been, insolvent.

"8. No part of said bill of goods has ever been paid, and Wm. Schotten & Co. did not hear of said insolvency until after said goods were shipped and while *in transitu*.

"9. At the time of levy the sheriff went into the room where the goods were in the railroad warehouse, and sorted them over so as to identify them, and then levied on them, and for said plaintiffs tendered to the railroad company the freight charges, which were refused. Both the attachment and garnishment were in due form of law in all respects. The goods were never delivered to Emporia Mercantile Association, unless above facts show delivery."

The court found, as conclusions of law—

"First, that said Wm. Schotten & Co. are entitled to said sum of money, $143.12 by their right of stoppage *in transitu*, relieved of all claim or lien on account of said attachment and garnishment. Second, as a matter of fact and law, that there is now due from said defendant the Emporia Mercantile Association to said defendants Wm. Schotten & Co. the sum of $253.20."

The court rendered judgment against the Mercantile Association for that sum, and also adjudged that the $143.12, the net proceeds of the goods in controversy, be applied on the judgment. The plaintiffs excepted to the conclusions of law and to the judgment, and bring the case here.

*Kellogg & Sedgwick*, for plaintiffs in error.
*Buck & Feighan*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: The only question to be decided in this case is, whether Wm. Schotten & Co., who interpleaded in the action, had a right, under the facts, to reclaim the goods which they had sold to the Emporia Mercantile Association. It is agreed that the goods were sold on credit, and that after the sale and before their arrival at the point of destination the consignee became insolvent. The right of the vendors to repossess themselves of the goods at any time while they were on the road and prior to their arrival at Emporia is conceded. But it is claimed that because the goods had reached the point to which they were shipped, and had been unloaded from the cars and placed in the warehouse of the railroad company, the transitus was at an end, and the vendors' right of stoppage was extinguished. The right of stoppage *in transitu* is not so limited an one as the plaintiffs would make it. It is one which the law favors, and is said to be founded upon the just principle that one man's property shall not be applied in payment of another man's debts, and the courts have been inclined to encourage rather than to restrict the exercise of the right. The general rule is that the vendor may resume possession of the goods at any time before they actually reach the possession of the vendee. This right continues in the vendor not only while the goods are being carried to the place of consignment, but may be exercised at any time until the delivery to the vendee or his agent has been completed. The unloading of the goods and the placing of them in the warehouse of the railroad company does not

1. Stoppage in transitu.

necessarily terminate the transitus, nor put an end to the right of stoppage; so long as they remain in the hands of the carrier or middlemen as such, the right does not cease. There may be cases where the possession of the carrier or warehouseman, after the final destination is reached, will, owing to the agreement of the parties, or the special circumstances of the case, be regarded as the possession of the vendee, and so put an end to the vendor's right of stoppage. But where goods are consigned and shipped in the ordinary way, and the railroad company which brings them to the point of delivery, in performance of its duty as carrier, unloads and places the

2. Implication; goods in transit. goods in its warehouse awaiting the payment of freight charges before delivery to the vendee, the presumption will be that the goods are still in transit, and that the right of stoppage yet remains in the vendor.

In an Ohio case quite analogous to the one at bar, certain goods that had been consigned and shipped in the usual way, were transferred by the railroad company to its warehouse at the station to which the goods were consigned, and near to which the vendee resided and did business, there to await the payment by him of the charges thereon as a condition precedent to their removal and delivery at his business house, and it was held that the transfer did not *ipso facto* constitute a delivery of possession to the vendee, but was to be regarded as a reasonable exercise of the duty by the carrier in the course of their transit, and as connected with the original employment of the company as agent of the vendor to transport and deliver, and therefore did not preclude the vendor's right of stoppage *in transitu.* It was recognized that in some instances the carrier or middleman might become the agent of the vendee and hold possession for the vendee, but it was said that such "agency will not be implied from the carrier's original employment, and can arise only by showing affirmatively some arrangement or understanding to that effect other than the general words of an ordinary consignment." ( *Calahan v. Babcock,* 21 Ohio St. 281.)

There is no conflicting authority upon the question presented here, and no necessity for a review of the decided cases. Among

many others which might be cited in support of the views expressed, we refer to the following: *Rucker v. Donovan*, 13 Kas. 251; *O'Neil v. Garrett*, 6 Iowa, 480; *Buckley v. Furnis*, 15 Wend. 137; *Covell v. Hitchcock*, 23 id. 611; *Harris v. Pratt*, 17 N. Y. 249; *Loeb v. Peters*, 63 Ala. 243; *Newhall v. Vargus*, 13 Me. 93; *Inslee v. Lane*, 57 N. H. 454; *Hoover v. Tibbitts*, 13 Wis. 79; *Atkins v. Colby*, 20 N. H. 155; *Blackman v. Pierce*, 23 Cal. 508.

The record of this case discloses nothing from which we might infer that the carrier was the agent of the vendee. The goods were sold and consigned in the ordinary course of business between merchants, and when they arrived at Emporia they were taken out of the cars by the railroad company and placed in its warehouse, and there held in its character as carrier to await the payment of charges and a delivery to the consignee. The railroad company had not delivered the goods to the vendee, and in that respect its duty as carrier was incomplete. The freight was never paid, nor have the goods ever reached the possession of the vendee. The transitus, therefore, had not terminated, and the vendor's right of stoppage continued notwithstanding the seizure made under the attachment sued out by the plaintiff. The cause was rightly decided by the district court, and its judgment will be affirmed.

All the Justices concurring.