## NORFOLK HARDWOOD COMPANY *vs.* NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

Suffolk. March 4, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Sale,* Vendor's lien. *Lien. Carrier,* Stoppage *in transitu. Replevin.*

Where a vendor consigns goods shipped by freight to its own name in the city where the purchaser does business, and, upon being notified by the carrier of their arrival at their destination, expressly authorizes the carrier to deliver the goods to the purchaser, and the carrier thereupon at the request of the purchaser transports the goods to the carrier's warehouse in a neighboring city and stores them there in the name of the purchaser, the vendor cannot maintain replevin against the carrier for the goods, since, although the freight charges for the original shipment of the goods remain unpaid, he no longer has any right to the possession of the goods, both because he has lost his vendor's lien by the delivery to the purchaser's order, authorized by him, and because the goods are no longer in transit in the course of the shipment made by him, but have entered upon a new shipment and upon storage authorized by the purchaser alone.

REPLEVIN for lumber shipped by the plaintiff from Ellisville, Mississippi, to itself as consignee in East Cambridge. Writ in the Superior Court for the county of Suffolk dated October 1, 1908.

The case was heard upon agreed facts by *Sanderson,* J. The facts are stated in the opinion. The judge found for the defendant and assessed damages to the defendant in the amount of the value of the lumber less all charges of the defendant. The plaintiff appealed.

*F. Hunt,* for the plaintiff.

*A. E. Burr,* for the defendant.

SHELDON, J. This action has been argued for the plaintiff as if it presented merely a question of the right of stoppage *in transitu,* but we are of opinion that this is not the case. The plaintiff, although it accepted the order of the Cambridge Lumber Company for the lumber in question, and undertook to forward the lumber accordingly, yet when it came to ship the goods, consigned them to itself and took a bill of lading running to itself. It thus, as between itself and the purchaser, retained the possession and control of the lumber, and retained also its vendor's lien for the agreed price. Benjamin on Sales, § 824, and

cases cited.   If the plaintiff has not lost this lien by parting with the possession of the goods, it can hold them, in spite of the credit agreed to be given, upon the insolvency of the purchaser.   *Arnold* v. *Delano,* 4 Cush. 33.   But if a delivery has been made to the purchaser by the authority of the plaintiff, then its lien, depending solely upon the possession of the property, is gone, and the plaintiff cannot hold the goods.   *Haskins* v. *Warren,* 115 Mass. 514.

When the car containing this lumber arrived at East Cambridge on August 4, 1904, the defendant's agent notified the plaintiff thereof, and the plaintiff on August 6 informed the agent by letter that the car was intended for the Cambridge Lumber Company, which is hereinafter called the purchaser; and on August 12, the plaintiff, at the request of the defendant's agent, expressly authorized delivery to be made to the purchaser.   In the meantime, on August 8, the defendant, at the request of the purchaser, forwarded the car containing the lumber from East Cambridge to the defendant's Huntington Avenue storehouse in Boston, and issued to the purchaser a local way bill naming the purchaser as the consignee.   On August 10, the purchaser requested the defendant to store these and some other goods; and the defendant did accordingly store them in the name of the purchaser in its storehouse aforesaid, where they remained until taken by the plaintiff on this writ of replevin.

There can be no doubt upon these facts that the property, subject to the defendant's lien for its proper charges, was delivered by the defendant to the purchaser with the consent and authority of the plaintiff; and the plaintiff's lien for the price of the lumber was thus destroyed.   And this is confirmed by the fact that the plaintiff, in its letter of September 12, 1904, written to the defendant after a question had arisen as to the freight bill upon these goods, expressly said that it " of course [had] nothing to do with what became of the lumber in this car."   The plaintiff voluntarily gave up its lien upon the property; it does not rest its claim upon the allegation that this was procured by means of any fraud practised upon it; and it cannot now reinstate itself in its original position.

If however it were necessary to pass upon that question, we

should be obliged to hold that the plaintiff had failed to show any right to stop these goods *in transitu.* The goods were to be transported to East Cambridge, and, according to the final directions of the plaintiff, to be there delivered to the purchaser. The right of stoppage *in transitu* would continue until the goods were delivered to the purchaser, or until, by some new arrangement between the carrier and the purchaser, the former had recognized the title of the latter, had attorned to it, and agreed to hold the goods, not merely as carrier or as a warehouseman pending a complete delivery to the purchaser, but as agent for the purchaser under a new contract made and assented to by both the carrier and the purchaser. *Brewer* v. *Boston & Albany Railroad,* 179 Mass. 228. The fact that the carrier's prior charges have not been paid, although strong evidence that no such new contract has been made, is not decisive. *Brewer* v. *Boston & Albany Railroad, ubi supra. Ex parte Barrow,* 6 Ch. D. 783. *Ex parte Cooper,* 11 Ch. D. 68. *Kemp* v. *Falk,* 7 App. Cas. 573. *McLean* v. *Breithaupt,* 12 Ont. App. 383. *Calahan* v. *Babcock,* 21 Ohio St. 281. *Jeffris* v. *Fitchburg Railroad,* 93 Wis. 250. *Symns* v. *Schotten,* 35 Kans. 310.

But here, although the defendant's charges remained unpaid, it yet did make a new agreement with the purchaser for the further transportation of these goods to a neighboring city; and it carried out that agreement. There was more than a mere storage of the goods for the convenience of the purchaser, which would not have terminated the transit. There was a recognition of the purchaser as owner, and a new transit, made under a new agreement with the purchaser, to a new destination, for the expenses of which the plaintiff personally could not have been held. If this new agreement had been made by the purchaser with another railroad company, which had paid the defendant's charges and made the new transportation, there could be no question that the original transit had ended, even though this new carrier held the goods not only for the freight due to itself, but also for the past charges of the former carriers which it would have satisfied. The original transit is at an end when the goods have reached their original destination; and when after this they are actually sent by the purchaser to a new destination, the right of stoppage *in transitu* is as effectually destroyed as if

he had taken manual possession of them and placed them in his own warehouse. This has been clearly stated by Lord Esher, in *Bethell* v. *Clark*, 20 Q. B. D. 615, 617, in which it was held that the original transit was not terminated: " There has been a difficulty in some cases where the question was whether the original transit was at an end, and a fresh transit had begun. The way in which that question has been dealt with is this : Where the transit is a transit which has been caused either by the terms of the contract or by the directions of the purchaser to the vendor, the right of stoppage *in transitu* exists; but, if the goods are not in the hands of the carrier by reason either of the terms of the contract or of the directions of the purchaser to the vendor, but are *in transitu* afterwards in consequence of fresh directions given by the purchaser for a new transit, then such transit is no part of the original transit, and the right to stop is gone." To the same effect in substance, see *Ex parte Gibbes*, 1 Ch. D. 101; *Ex parte Miles*, 15 Q. B. D. 39; *Kendal* v. *Marshall*, 11 Q. B. D. 356; *Biggs* v. *Barry*, 2 Curtis, 259; *Sawyer* v. *Joslin*, 20 Vt. 172; *Guilford* v. *Smith*, 30 Vt. 49. This is assumed in *Brooke Iron Co.* v. *O'Brien*, 135 Mass. 442. It can make no difference in principle that the new directions were given by the purchaser to the original carrier, and that the new transit was made over the lines of the original carrier. This was the case in *Mollison* v. *Lockhart*, 30 New Brunswick, 398, but that circumstance was not deemed worthy of notice.

Accordingly the plaintiff had no right of stoppage *in transitu* when it replevied these goods, and no right to their possession, and cannot maintain this action.

There is much to indicate that the plaintiff might have rescinded its sale of this lumber on the ground that it was procured by the fraud of the purchaser; but that position does not seem to have been taken in the Superior Court, and has not been contended for here. Moreover the case was heard upon agreed facts, without giving to the court power to draw inferences therefrom. *Brooks* v. *West Springfield*, 193 Mass. 190. *Coffin* v. *Artesian Water Co.* 193 Mass. 274. *Cunningham* v. *Connecticut Ins. Co.* 200 Mass. 333.

The judgment for the defendant must be

*Affirmed.*