NORTHERN GRAIN CO. v. WIFFLER et al.    (No. 7368.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

SALES ⬤⟹313—RIGHTS OF SELLERS—RIGHT OF STOPPAGE IN TRANSITU.

Where the buyer of oats refused to accept them after receiving the bill of lading and having it marked "Canceled by delivery," and the seller recovered judgment against the buyer for the price, it had no right of stoppage in transitu, that right terminating when the goods are delivered; and where the railroad company, in whose possession the oats had been left, sold them, the seller cannot claim the proceeds of that sale as against the buyer's assignee.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 870, 872, 878–884; Dec. Dig. ⬤⟹313.]

Hotchkiss and Laughlin, JJ., dissenting.

Submission of controversy between the Northern Grain Company and Joseph J. Wiffler, the New York Central & Hudson River Railroad Company, and Ernest C. Dana, as trustee, etc. Judgment for trustee.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Richard F. Weeks, of New York City, for plaintiff.

Brennan, Curran & Bleakley, of Yonkers, for defendant Dana.

McLAUGHLIN, J. In April, 1912, the plaintiff entered into a contract with the defendant Wiffler for the sale and delivery to him at Yonkers, N. Y., of a car load of oats. On the 21st of May, 1912, the oats were shipped from Buffalo, N. Y., over the lines of the defendant railroad company, upon a bill of lading which consigned them to

the order of the plaintiff. They arrived at their destination on May 25, 1912, and on the 28th of May following a 60-day draft for the purchase price was accepted by Wiffler and delivered to the plaintiff as payment, conditioned upon the draft being honored at maturity. At the same time the bill of lading was delivered to Wiffler, who thereafter presented it to the railroad company, and it was marked "Canceled by delivery." Some time thereafter—just when does not appear—Wiffler examined the oats and was not satisfied with their condition. He then withdrew the bill of lading from the railroad company, caused the stamp "Canceled by delivery" to be stricken from the face of the same, and then returned the bill of lading to the plaintiff, with the statement that he refused to accept the oats by reason of their condition. The oats remained in the car in which they were shipped, on the tracks of the defendant company, until October, 1912, when they were sold by it at public auction, and after deducting its charges there remained in its hands $287.85. Wiffler stopped payment on the draft before maturity, and on October 22, 1912, the plaintiff commenced an action upon it in the Supreme Court. The defendant interposed an answer, and alleged that:

"The draft was given by defendant in payment of a certain car load of oats which plaintiff sold to the defendant, and that the same were good, marketable, and usable, and that when defendant received said car load the same were old and musty, and could not be sold and used, and were of no value whatsoever, and for that reason the note was given without consideration."

On November 7, 1913, Wiffler made a general assignment for the benefit of creditors to the defendant Dana, as trustee. The issue raised by the defendant's answer in the action commenced by the plaintiff upon the draft was tried on April 11, 1914, and judgment rendered in favor of the plaintiff for the full amount demanded in the complaint. Execution was issued upon the judgment, and the same was returned unsatisfied. The plaintiff then notified the railroad company that it exercised its right of stoppage in transitu, and at the same time surrendered for cancellation the bill of lading sent to it by Wiffler.

Upon the foregoing facts this court is asked to determine whether the plaintiff, or Dana, as trustee, is entitled to the $287.85 held by the railroad company; neither it nor Wiffler making any claim thereto. It is urged on the part of the plaintiff that it is entitled to the money, since it has exercised the right which it had of stoppage in transitu. I do not think the plaintiff had this right, because the transit was terminated when the oats were delivered to Wiffler. The right of stoppage in transitu is terminated, so as to preclude the seller from stopping the goods, if, before the exercise of the right, the goods are delivered to the buyer. Stevens v. Wheeler, 27 Barb. 658; 35 Cyc. 499. Wiffler gave the draft in payment and received the bill of lading, which was marked "Canceled" when the oats were delivered to him. The right of stoppage in transitu terminated at that time, and such right could not be again brought into existence by an act of the railroad company, or Wiffler's refusal thereafter to take the oats or pay the draft. Not only this, but the action upon the draft was a recognition upon the part of the plaintiff that the contract with Wiffler had

been completed by the sale and delivery of the oats, and that the title to them was in him. The answer of Wiffler also recognized there had been a sale and delivery, but the oats, by reason of their condition, were worthless, and therefore the draft was given without consideration. When the judgment was obtained by the plaintiff for the full amount of the draft, that was, in fact, an adjudication that the oats had been delivered to the defendant, that the title was in him, and that there was no defense to the payment of the draft.

It follows that the defendant Dana, as trustee, is entitled to a judgment directing the railroad company to pay to him $287.85, and also directing the plaintiff to pay to him the disbursements incurred upon the submission. Settle order on notice.

INGRAHAM, P. J., and DOWLING, J., concur.

HOTCHKISS, J. (dissenting) I think there should be judgment for the plaintiff. The plaintiff's seller's lien was lost when the oats were delivered to the railroad company (Rummell v. Blanchard, 153 N. Y. Supp. 159, decided in the Appellate Division, First Department, May 7, 1915); but its right to stop continued so long as the goods were in transit. Although by accepting the draft Wiffler may have waived the right to examine the goods (Personal Property Law [Laws 1911, c. 571] art. 5, § 128, subd. 3), plaintiff's right to stop them was not affected by Wiffler's obtaining possession, for he subsequently rejected them; nor was it affected by defendant's refusal to receive back the goods (Personal Property Law, supra, § 139). So far as the conduct of Wiffler and plaintiff is concerned, I regard nothing as of legal importance that happened prior to the commencement by plaintiff of the suit on the draft, because, if whatever Wiffler did prior to that time gave rise to questionable legal rights in him, these were all waived when plaintiff sued on the draft. The right to stop continued until Wiffler became insolvent, and so long as the goods or their proceeds remained in the hands of the carrier and had not been effectually disposed of by Wiffler. Stevens v. Wheeler, 27 Barb. 658; Personal Property Law, supra, §§ 138, 143. The sale of the goods by the railroad company in foreclosure of their lien did not divest plaintiff's right so far as the net proceeds were concerned. Williston on Sales, § 536; Clark v. Lynch, 4 Daly, 83; O'Brien v. Caldwell, 16 Md. 122, 77 Am. Dec. 284; Hause v. Judson, 34 Ky. (4 Dana) 7, 29 Am. Dec. 377.

Nor was the act of suing upon the draft inconsistent with the right to stop. The old doctrine that the right of stoppage in transitu rests upon the theory of rescission, and not upon lien, has long been abandoned (Babcock v. Bonnell, 80 N. Y. 244; Sheppard v. Newhall, 54 Fed. 306, 4 C. C. A. 352; Rucker v. Donovan, 13 Kan. 251, 19 Am. Rep. 84; Diem v. Koblitz, 49 Ohio St. 41, 29 N. E. 1124, 34 Am. St. Rep. 531), and the right of the seller to sue for the price of the goods without waiving his lien has been incorporated into the Uniform Sales Act (Personal Property Law, supra, § 137, subd. 2). Nor was there ever any such delivery of the oats to Wiffler as defeated the seller's right of stoppage. Prior to the adoption of the Uniform Sales Act it had

uniformly been held that the delivery by the carrier necessary to defeat the right to stop was an actual delivery to the purchaser or his agent, or transferee (Harris v. Pratt, 17 N. Y. 249, 264); that the right continued so long as the actual possession of the carrier, qua carrier, continued (Id.; Holbrook v. Vose, 6 Bosw. 76, 105), and that mere constructive delivery to the purchaser was ineffectual. If the right to stop might be defeated by constructive delivery to the purchaser, manifestly it would be defeated by delivery to the carrier, and thus the right to stop would never exist. It was on the ground of this distinction between actual and constructive delivery that we recently held that a seller's lien for the purchase price was lost by the delivery by the seller to the purchaser of a negotiable warehouse receipt for the goods (Rummell v. Blanchard, supra), in which case we drew an analogy between negotiable warehouse receipts and negotiable bills of lading, the bona fide transfer of which, for value, was, as shown by the authorities we cited, held to transfer title and possession.

The Uniform Sales Act as adopted in this state (Laws 1911, c. 571, § 139; Personal Property Law, art. 5) plainly states "when goods are in transit" and when they are not. They are in transit:

"(a) From the time when they are delivered to a carrier * * * until the buyer, or his agent in that behalf, takes delivery of them from such carrier. * * *

"(b) If the goods are rejected by the buyer, and the carrier or other bailee continues in possession of them, even if the seller has refused to receive them back.".

Goods are no longer in transit:

"(a) If the buyer, or his agent in that behalf, obtains delivery of the goods before their arrival at the appointed destination.

"(b) If, after the arrival of the goods at the appointed destination, the carrier or other bailee acknowledges to the buyer or his agent that he holds the goods on his behalf and continues in possession of them as bailee for the buyer or his agent. * * * *"

Undoubtedly by the acts of the plaintiff alone, and without regard for anything that Wiffler did, *title* to the oats passed to Wiffler. But, as I have shown, the right of stoppage in transitu is based on the theory of lien; hence, that title has passed to the purchaser. The material question in this case is not as to where the title was, but where was the actual possession of the oats or their proceeds at the time plaintiff served its notice to stop.

If the foregoing views are correct, the plaintiff is entitled to judgment for $287.85, and also, according to the terms of the submission, his disbursements incurred herein.

LAUGHLIN, J., concurs.