Moore *vs.* Moore.                                   <span style="float:right">Pet. Eq.</span>

ERROR TO MADISON CIRCUIT.                    Case 11.

1. Money due for land sold by husband and wife, which descended to the wife from her father, until received by the husband, may be subjected to a settlement for the benefit of the wife by the chancellor, (*Lay's ex'or v. Brown, &c.,* 13 *B. Mon.* 295;) especially since the act of 1846.

2. The right of the wife to claim a settlement out of estate descended to her is not confined to cases where the chancellor is called upon to subject such estate to the payment of the debts of the husband, but may be asserted by the wife by an original bill. (2 *Story's Eq., Sec.* 1414, *page* 866; *Clancy on Rights,* 471.

3. The right of the wife to a settlement of estate descended to her cannot be defeated by the assignment of the husband. (*Thomas v. Kennedy,* 4 *B. Mon.,* 235; *Crooks v. Turpin,* 10 *B. Monroe,* 244-5. If in such case the husband does assign, even for a valuable consideration, it is subject to the equity of the wife. (2 *Story's Eq., Sec.* 1412, and cases there cited.

4. An assignee of the husband, of the choses in action of the wife, for the payment of debts, is bound to make a settlement for the wife.

5. The proceeds of the sale of the wife's land, so long as it remains in the hands of the purchaser, constitutes a part of her estate out of which she has a right to a settlement.

Judge SIMPSON delivered the opinion of the court.          <span style="float:right">December'16.</span>

<span style="float:right">Case stated.</span>

William Fitzpatrick died in the year 1849, possessed of a considerable real and personal estate. One of his daughters had intermarried with Walker Moore. After the death of her father she, in conjunction with her husband, sold her interest in the tract of land on which her father resided at the time of his death, to her brother, Cyrus Fitzpatrick, for six hundred and eight dollars. Three hundred dollars of the purchase money was appropriated to the purchase of her sister's interest in a tract of land in the state of Indiana, which had descended to them from their father; for the residue of the purchase money—being three hundred and eight dollars—a note was executed by the purchaser to her husband, payable sometime thereafter, and at the same time a deed for the land was made to the purchaser by the husband and wife. This note was, on the day it was executed, placed by the husband in the hands of William P. Moore, with-

out any assignment thereon, for the purpose of in-
demnifying him against a liability he had incurred as
the surety of the husband.

Walker Moore shortly thereafter died, leaving his
wife, with several small children, in a very destitute
condition. After the death of her husband she filed
a petition, claiming a right in equity to have the
balance of the purchase money due from her brother,
Cyrus Fitzpatrick, settled upon her—the note for
three hundred and eight dollars not having been paid.
She stated in her petition that the note was made pay-
able to her husband, without her knowledge or con-
sent, and that she had never consented that William
P. Moore should have the benefit of it. She was not
present when the note was executed, nor did it ap-
pear that she knew to whom it was made payable.

1. Money due
for land sold by
husband and
wife, which de-
scended to the
wife from her
father, until re-
ceived by the
husband, may
be subjected to
a settlement for
the benefit of
the wife by the
chancellor,
(Lay's ex'or. v.
Brown, &c., 13
B. Monroe, 295,)
especially since
the act of 1846.

The land sold had been acquired by the wife since
the passage of the act of 1846, to protect the rights
of married women, and under the operation of that
law the husband had no interest in it, which was lia-
ble for his debts. The land having been sold the pur-
chase money, if received by the husband, would con-
stitute a part of his estate; but until so received by
him it remains subject to the wife's equity to a set-
tlement. This doctrine was fully recognized in the
case of Lay's executor v. Brown &c., 13 B. Mon. 295,
and is more peculiarly applicable to a case like the
present, where the lands sold were acquired by the
wife since the passage of the act of 1846.

2. The right
of the wife to
claim a settle-
ment out of es-
tate descended
to her is not
confined to ca-
ses where the
chancellor is
called upon to
subject such es-
tate to the pay-
ment of the
debts of the
husband, but

But it is contended, that the wife's equity to a set-
tlement is merely an incidental right, which arises in
her favor when the husband, his creditor or assignee
applies to the chancellor for aid to reach her estate,
but cannot be enforced by her in an original action
brought for that purpose. Such seems to have been
the doctrine, when the equitable right of the wife was
not as well defined, or as clearly established, as it is
at present. It was then supposed that the jurisdic-
tion of a court of equity rested solely upon the ground
that the parties who asked for equity should be re-

quired to do equity, and that the wife was entitled to relief upon this ground alone. But the doctrine is now firmly established that whenever the wife is entitled to this equity for a settlement, she may assert it in an original suit, as plaintiff. (2 vol. *Story's Equity*, sec. 1414, *page* 866; *Clancy on Rights*, 471.) It is now regarded as a substantial right which the wife may assert, in an independent suit, and not one that is contingent and merely incidental.

But it is also contended, that the right of the wife may be defeated by an assignment by the husband for a valuable consideration. If this were so the right would be of but little value, and could always be defeated by the husband. The correct doctrine upon this subject, and the one that was established in the cases of *Thomas v. Kennedy*, 4 *B. Monroe*, 235, and *Crooks v. Turpin*, 10 *B. Monroe*, 244-5, is, that in that part of the wife's estate to which she is entitled in equity to a settlement, the assignee of the husband, even for a valuable consideration, takes it subject to this equity of the wife. (*See* 2 vol. *Story's Equity, sec.* 1412; and cases there cited.) The cases referred to as supporting a different doctrine were cases in which an effort was made to subject the wife's legal choses in action to this equity of the wife, and the courts held, that her equity did not extend to, or embrace that part of her estate, and consequently they could not prevent either the husband or his assignee from using the legal remedies to which they were entitled to reduce it into possession. But whenever any part of the estate of the wife is held to be subject to her equity to a settlement, such right cannot be defeated or divested by an assignment made by the husband, but the assignee is bound to make such a settlement. 2 *Story's Equity, sec.* 1412, and the cases referred to.

It was formerly doubted whether a special assignee from the husband, for a valuable consideration of the choses in action, or equitable interests of the wife, was bound to make a settlement out of the estate assigned to him; but it has been long settled that his

MOORE
vs.
MOORE.

- - - -

may be asserted by the wife by an original bill. (2 *Story's Eq., sec.* 1414, *page* 866; *Clancy on Rights*, 471.)

3. The right of the wife to a settlement of estate descended to her cannot be defeated by the assignment of the husband. (*Thomas v. Kennedy, 4 B. Monroe*, 235; *Crooks v. Turpin*, 10 *B. Monroe*, 244-5.) If in such case the husband does assign, even for a valuable consideration, it is subject to the equity of the wife. (2 *Story's Eq., sec.* 1412, and cases there cited.)

4. An assignee of the husband, of the choses in action of the wife, for the payment of debts, is

Moore
vs.
Moore.
———
bound to make
a settlement for
the wife.

assignee, for the payment of his debts, was bound.
It is very questionable whether the holder of the note
in this case, occupies a better attitude than assignees
for the payment of debts due to the creditors of the
husband generally. But whether he does or not, is
not deemed material, inasmuch as the established
doctrine now is that all assignees of the husband are
placed upon the same footing, and all take the choses
in action, and equitable interests of the wife, subject
to her right to a settlement.

5. The pro-
ceeds of the sale
of the wife's
land, so long
as it remains in
the hands of the
purchaser, con-
stitutes a part
of her estate out
of which she
has a right to a
settlement.

The proceeds of the sale of the wife's land, made
by her and her husband, so long as they remain in the
hands of the purchaser, constitute a part of her es-
tate, out of which she has a right, in equity, to a set-
tlement. The money is, according to every princi-
ple of right and justice, as much her property as the
land was before its conversion. Is there any good
reason for limiting the exercise of equitable jurisdic-
tion, in affording protection to the wife against the
improvidence or injustice of the husband, to such in-
terests as are purely equitable, and for leaving the
money arising from the sale of her land to the mercy
of her husband? The only plausible reason in favor
of it, that can be urged, is that the legal effect of the
sale is to entitle the husband to the purchase money.
This reason, however, is merely technical and unsub-
stantial. The legal effect of the marriage is to
entitle the husband to all equitable interests of the
wife, but as he cannot reduce them into possession,
without resorting to a court of equity, they were held
to be subject to the equitable right of the wife to a
settlement. So long as courts of equity interposed
in favor of the wife only, where the husband or his
assignee applied to them for aid, there was some rea-
son for their refusing to interfere to prevent him from
obtaining possession of her estate, where no such as-
sistance was necessary or required. But now, when
the wife's interests are protected, and her equity dis-
pensed to her, upon her own application, whether the
husband or assignee asks for assistance or not, surely

there can be no plausible pretext for not subjecting to the same rule any part of her estate, which has not been reduced to possession by the husband, although he may have the right to do it, without resorting to a court of equity for assistance, provided the estate be of that nature and description to which her right in equity to a settlement attaches.

During the pendency of this action the defendant, William P. Moore, procured from the plaintiff an instrument of writing, in which she relinquished all her right to the fund in contest, and directed the suit to be dismissed. This writing was set up and relied upon by the defendant in an amended answer. We think, that the circumstances attending its procurement, and the manner in which it was effected, are such, as to destroy the validity of the writing, and to preclude him from relying upon it to defeat the plaintiff's right in equity to the unpaid balance of the purchase money. But as he paid, as part of the consideration for its execution, the sum of fifty dollars, the plaintiff should be required, inasmuch as she repudiates the contract to refund to him that sum, and it should be paid to him out of the fund in contest.

Wherefore, the judgment of the court below, denying to the plaintiff any relief, is reversed, and cause remanded that a judgment may be rendered as herein indicated.

Turner for plaintiff; Burnam for defendant.