THOMAS H. SEYMOUR & others *vs.* FREDERICK A. NEWTON.

A., in Chicago, having received a letter from B., in Worcester, to forward him goods and draw on him for the price, bought and paid for the goods, sent to B. a bill describing them as bought for B.'s account and risk, and including, besides the price paid, charges and commissions, and drew a bill on B., payable to C., cashier of a bank in Chicago, and delivered it to C., together with a railroad receipt for the goods, which described them as consigned to C., care of B. The draft was accepted, but before the arrival of the goods it was protested and B. became insolvent. D., C.'s agent in Worcester, then requested the railroad agent there not to deliver the goods to B., but to notify D. of their arrival; and the agent did so notify D. While in the freight depot they were attached by C. as the property of B., in a suit on the draft; and they remained in the depot, under attachment, till they were replevied by A. *Held*, that a jury would be authorized to find that A.'s lien was not discharged.

REPLEVIN of thirty tierces of lard. Writ dated February 23, 1869. Trial in the superior court, before *Devens*, J., who reported the following case for the determination of this court:

On or about February 1, 1869, the plaintiffs, who were merchants in Chicago, doing business under the name of T. H. Seymour & Company, received a letter from Francis W. Fish, a dealer doing business in Worcester under the style of F. W. Fish & Company, requesting them to forward to him thirty tierces of lard, and draw on him at three days' sight for the price. The plaintiffs thereupon bought this lard, paid for it, and sent to Fish the following account, signed by them and dated February 5, 1869:

"Account purchase of 30 tierces lard by T. H. Seymour & Company, Chicago, for account and risk of Messrs. F. W. Fish & Company, Worcester, Massachusetts.

"February 4, of Buckworth 30 tierces lard 9780 lbs. @ 20¾ . $2027.35

| Charges. | |
|---|---|
| Inspection . . . . . . . | $3.00 |
| Exchange . . . . . . . | 7.78 |
| Stamp on time draft . . . . . | 1.05 |
| Interest . . . . . . . . | 4.61 |
| Commission . . . . . . | 30.44 |
| | 46.88 |

"Amount charged in account . . $2074.23

"Cr. By our three days' sight draft . . . . . $2074.23"

The plaintiffs also drew on F. W. Fish & Company, as requested; and the draft was made payable to Isaac G. Lombard, cashier of the Fifth National Bank of Chicago, and delivered to him, together with the railroad receipt, which described the lard as "Received from T. H. Seymour & Company; consigned to account I. G. Lombard, cashier, care of F. W. Fish & Company, Worcester, Massachusetts; to be transported over the line and delivered in like good order to the consignee or owner at Worcester." Lombard sent the draft for acceptance and collection, together with the railroad receipt, to the City National Bank at Worcester, and on February 9 the draft was presented to Fish, the receipt not being then attached to it, and accepted. The lard was shipped on February 5. On February 15 Fish stopped busi

ness ; the draft was protested for nonpayment ; one Paine, the cashier of the City National Bank, acting for Lombard, requested the freight agent of the railroad not to deliver the lard to Fish, and to notify him of its arrival ; and the agent did so notify Paine. The plaintiffs, on hearing of Fish's failure, requested the freight agent of the railroad at Chicago to stop the goods *in transitu*, and made efforts so to stop them by causing telegrams to be sent to various points on the route and to Worcester. Fish was in solvent, and afterwards became bankrupt.

On February 18 the lard arrived in Worcester ; the car contain ing it was put in the freight depot ; and while there the lard was attached on the same day by Lombard in a suit on the draft against Fish, and subsequently by other creditors of Fish ; the defendant, who was a deputy sheriff, made the attachments and appointed the freight agent of the railroad at Worcester keeper ; and the lard was stored in the freight depot until replevied in this suit.

Fish's place of business was about one fourth of a mile from the freight depot. He was accustomed to receive his freight at the depot, and freight of this kind directly from the car.

After the protest of the note, but before bringing this suit, the plaintiffs, who had been credited by the Fifth National Bank with the amount of the draft, less interest and exchange, paid the amount of the draft to that bank, but the draft remained in Paine's hands.

If on these facts the plaintiffs could maintain this action, then hey were to have judgment for nominal damages and costs ; if not, then the defendant to have judgment for a return and costs.

*P. E. Aldrich,* for the plaintiffs.

*G. Swan,* (*G. F. Verry* with him,) for the defendant.

CHAPMAN, C. J. The first step of the transaction stated in the report is a letter of Fish, (calling himself F. W. Fish & Company,) dated February 1, 1869, requesting the plaintiffs to forward to him thirty tierces of lard, and draw on him at three days sight. On February 5 they sent him a bill purporting to be an account of the purchase of the lard by them for his account and risk. The bill is for the price paid, with charges and commis-

sions. On the same day they drew on him as he had requested, making the bill payable to Lombard, cashier, whose bank discounted the draft. They also gave to Lombard the railroad receipt, describing the goods as consigned to him, but to the care of Fish & Company. Thus the delivery of the lard to the carrier was not a delivery to Fish as vendee, but was a consignment to Lombard. The obvious purpose was that there should be no delivery to the vendee till the draft should be paid. Lombard sent the draft and receipt to the bank at Worcester to collect the draft, or, if it was not paid, to reserve the lien on the goods for the benefit of the plaintiffs, as well as of his bank.

Before the arrival of the lard, the draft having been protested, the cashier of the bank at Worcester, whose duty it was to look after the security, informed the agent of the railroad of the facts, countermanded the delivery to Fish, and requested the agent of the railroad to notify him of its arrival, which was done. This transaction was a taking possession for the consignee. Fish never claimed the lard or saw it, nor was he notified of its arrival. The fact that he had been accustomed to receive his freight there would not constitute a delivery of this particular freight to him. In this state of things the plaintiffs had a right to take it, as being stopped *in transitu*, and not having come to the possession of the vendee. They might exercise this right, whether they were vendors or factors, and although they had received the draft. 2 Kent Com. (6th ed.) 544 *& seq. Newhall* v. *Vargas*, 13 Maine, 93. The attachments could not interfere with this right. *Naylor* v. *Dennie*, 8 Pick. 198. Even a sale by Fish would not have deprived them of the right. 2 Kent Com. (6th ed.) 544. Nor could the attachment by Lombard affect the plaintiffs' lien, as it does not appear that he was then agent to institute such a proceeding; whatever effect it might have upon the lien of his bank. The plaintiffs paid the draft, and thus discharged the claim of he bank; and brought this action of replevin adversely to all the attachments. Upon the facts stated, the real transaction appears to be, that they purchased the goods on account of Fish, and had a lien upon them for all their charges and commissions. The consignment to Lombard was to preserve this lien, and also to secure

the bank. Lombard took the goods at the depot to preserve this security for both, and the jury would be authorized to find that the lien of the plaintiffs has never been discharged.

*Judgment for the plaintiffs.*