## Case No. 1,099.

### In re BATCHELDER.

### Ex parte LUCE.

[2 Lowell, 245.][1]

District Court, D. Massachusetts. May Term, 1873.

BANKRUPTCY—SALE—VENDOR'S LIEN.

1. A., the owner of certain goods, deposited them with a warehouseman in the name of B., who was A.'s broker, and afterwards sold them to B., gave him a receipted bill of parcels, and took his note for the price. *Held*, that no further delivery of the goods was necessary, and that A.'s lien as vendor was lost.

2. Another parcel of goods was warehoused in the name of C., another broker, and was sold by A., the owner, to B., and a receipted bill given, and a negotiable promissory note taken for the price, which note was signed by B., and indorsed by D. for B.'s accommodation. B. and D. failed before the note became due: Notice of the sale had been given to C., the broker, but not to the warehouseman. *Held*, that the possession was not changed, and the lien of A. revived on the failure of B. and D.

3. As affecting the lien it was immaterial whether the note was taken as payment or security. A. was not bound to surrender the note, but might require the goods to be sold, and indorse the amount of the proceeds upon the note, and prove against the estates of B. and D. for the balance.

In bankruptcy. The petitioner, [D. W.] Luce, sold several lots of pickled salmon to [M. T.] Batchelder, at sundry times, and took his notes for the price, payable in four months from their several dates, indorsed by a third person. Both the buyer and the indorser failed, and became bankrupt, leaving the notes unpaid; and the petitioner proved for the full amount of the notes at the first meeting of

---

[2] [From 3 N. B. R. 150, (Quarto 37.)]
[3] [From 3 N. B. R. 151, (Quarto 37.)]

[4] [From 3 N. B. R. 151, (Quarto, 37.)]
[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

Batchelder's creditors. He soon after filed his petition, averring that his proof was made unadvisedly, in the absence of his counsel, and that he was now informed that he had a lien on such of the salmon as remained in warehouse, and prayed that the goods might be sold, and the proceeds be applied to the payment of his debt, and that his proof should be so modified as to stand good only for any balance that might remain due him, after crediting the proceeds of sale. The parties agreed, in writing, to a statement of facts. Sixty barrels of the salmon were put by Luce into the hands of Beaman Brothers, brokers, for sale, and were by them stored in the warehouse of Lombard & Co., in their own names. When this lot was sold to Batchelder, a receipted bill of the same was given him, and Beaman Brothers were notified by Luce that the sale had been made, and were ordered to deliver the sixty barrels to Batchelder; but the latter never called upon Beaman Brothers, nor upon Lombard, the warehouseman, for the goods, or any part of them, and no transfer of them was made on Lombard's books. There were three other lots, all of which were stored with Lombard in the name of Batchelder, who was a broker as well as a dealer, and while so stored were bought by him; and parts of two of these lots were delivered, from time to time, by Lombard to Batchelder before his failure.

No notice was given by Luce to Beaman Brothers, nor to Lombard, of his intention to claim a lien, until three months after the failure of Batchelder, and after protracted negotiations for a settlement with him had resulted in nothing. The notes which Luce took for the price of all these goods were pledged by him to a bank as collateral security for a loan; but it was agreed at the argument that they were afterwards taken up by Luce, and were now held by him. He did not offer to cancel or surrender the notes, intending to prove them against the indorser's estate in bankruptcy. By consent of both parties an order was passed, a few days before the hearing, authorizing a sale of the goods, the proceeds to be held subject to the further order of the court.

C. G. Keyes, for Luce.
J. B. Harris, for assignee.

LOWELL, District Judge. It seems equally evident that Luce retains a vendor's lien upon the sixty barrels, and that he has none upon the other lots. If goods at the time of their sale are in the possession of a warehouseman or other bailee of the vendor, the lien is not lost by a simple notice to the bailee of the sale; but he must do some act, or come under some obligation, by which he is to be considered as having changed his relation to the vendor, and transferred his allegiance, so to say, to the vendee. Notice may be enough to put him on his guard, and to render him liable to an action if he does any thing inconsistent with the notice; and a notice silently received may be evidence of acquiescence, and it may even be conclusive evidence thereof, by way of estoppel, if third persons have been misled; but, as between the vendor and vendee, I understand that the possession is not changed until the warehouseman has in some way acknowledged the change, and has become the agent of the vendee. In the analogous law of stoppage in transitu, the carrier who receives goods very often has notice that the consignee has bought them, and is, in fact, their owner, and he is notified and directed to deliver to the vendee; but until he has either delivered them, or changed his relation in some way so as to become the exclusive agent of the vendee, they may be stopped, if the occasion arises. In short, such an order is revocable in the case of the failure of the vendee, unless it has been acted on.

This case, however, does not show that even notice was given to the warehouseman. The notice was to the brokers in whose name the goods were stored, which is one step further off. Such a notice could not be held to work a constructive change of possession. McEwan v. Smith, 2 H. L. Cas. 309. See, too, Dixon v. Yates, 5 Barn. & Adol. 313; Whitehead v. Anderson, 9 Mees. & W. 518; Griffiths v. Perry, 1 El. & El. 680; Donath v. Broomhead, 7 Barr, [7 Pa. St.] 301. It was argued with much earnestness that, after a payment for the goods by note, the right was lost, or rather had nothing to rest on. This would be so, if the debt were really paid; but when it turns out that what was accepted as payment does not bear the fruit of payment, the law does not insist on taking the word for the thing. The cases are all one way on this point. The special doctrine of the courts of Massachusetts which was insisted on, that a negotiable note is presumed to be payment, unless the contrary is proved, is of no consequence, because it is admitted in many cases decided by other courts that the notes in those cases were expressly received as payment; but the vendor has been permitted to assert his lien. It is enough to cite, upon this point, Arnold v. Delano, 4 Cush. 33, and Mohr v. Boston & A. R. Co., 106 Mass. 67.

The only remaining question as to this lot of sixty barrels is, whether the petitioner can prove for the remainder of his note after giving credit for what he may receive by the sale of the goods. One of the notes which he holds was given for the sixty barrels, and for one of the other lots which was sold at the same time, though for a distinct price, and was included in one receipted bill. This note was indorsed by Brown, Chickering, & Co., who are in bankruptcy. So far as appears, the indorsement was given for the accommodation of Batchelder. It was not insisted that the sale was so far one and indivisible that a delivery of part

of the fifty-barrel lot ended the lien on the sixty-barrel lot; and the facts do not seem to admit of any such ruling. I therefore pass that point by. The argument is, that if the debt and lien are to be revived, the note must be given up and cancelled. I do not see any necessity for such action. When a suit is brought for goods sold, no doubt the vendor, before he can have judgment, must give up the vendee's note which he holds for the same debt; but when the note has been dishonored, and is in the possession of the vendor, I do not see what difference it makes in bankruptcy whether the money received from the realization of the lien be indorsed on the note or credited on the original debt, and whether the proof is made on the one or the other. Indeed, I think it more regular that the proof should be made on the note, for that really represents the debt. Again, I know of no reason why the vendor is obliged to lose any dividend he may receive from the indorser. In such a case it seems consistent with the rights of the parties to hold that the lien is held for the security of the note; else the vendor is put to the election between different securities, both of which he holds. Suppose the indorser to be a surety, as he is here, and to be nearly solvent, has not he or his assignee the right to require the vendor to obtain what he can out of his lien, and exonerate the surety's estate to that extent? I see no reason why the petitioner need surrender any of his security.

No reason has been assigned why the proof may not now be modified, as having been made under a mistake. In one case in Massachusetts a creditor was not permitted to change his proof after voting for the assignee and for the discharge of the debtor, though ignorantly. That was upon the ground that the rights of other creditors had been interfered with, or modified by the vote: New Bedford Sav. Inst. v. Fairhaven Bank, 9 Allen, 175. In most cases no such effect could fairly be attributed to a mere vote for assignee, and none is shown here. The other lots were already warehoused in the name of Batchelder when the sale was made. No notice or attornment was necessary or possible. There was nothing in the books of Lombard to show that Batchelder was an agent: his possession was Batchelder's; and when the latter bought the goods, and took delivery of a receipted bill, the possession and property coincided, and the lien was gone. It is the simple case of the vendee being in possession of the goods when he buys them.

I understand that the goods have depreciated in value in the lapse of time while the ownership was uncertain, and that they will not now bring enough to pay in full that part of the note which represents their price, and which is definitely shown and agreed to be $960.

The other lots were already standing in the name of the buyer, at the time of his purchase, and no further act was necessary or possible to complete the transfer than to receipt the bill.

The order is: That the sixty barrels be sold under the direction of the petitioner and assignee, as heretofore ordered, and the proceeds of sale, not exceeding the original price and any interest that may have accrued thereon, be paid to the petitioner and indorsed on the note, and that the proof heretofore made on said note in bankruptcy be reduced by the amount so indorsed. If the whole debt is paid, the proof to be cancelled, and if a surplus remains, it is to be held by the assignee. The remaining goods mentioned in the petition, or their proceeds, are to be transferred to the assignee, to be by him disposed of as assets in the bankruptcy.

---

BATCHELDER v. The SUCCESS. See Case No. 13,586.

BATCHELDER, (UNITED STATES v.) See Cases Nos. 14,540 and 14,541.

BATELSON v. The CYNTHIA. See Case No. 1,067.

BATEMAN, (GREENE v.) See Case No. 5,762.