DURGY CEMENT AND UMBER COMPANY *vs.* JOHN B. O'BRIEN.

Suffolk.   April 9. — June 26, 1877.   COLT & SOULE, JJ., absent.

A. sold goods to B., to be paid for upon their delivery, either in cash or in the notes of B. The goods were shipped on a vessel under a bill of lading by which they were to be delivered to B. on his paying the freight. Before the vessel arrived, B.'s notes were protested because of his inability to pay them in the usual course of business, and an agent of A., having heard that B. had failed, sent a person to stop the goods *in transitu.* This person, whose acts were subsequently ratified by A., before B. had paid or tendered the freight or come into possession of the goods, but, after they had been attached by a creditor of B., demanded the goods of the master of the vessel, and forbade his delivering them to B. *Held,* that A. had seasonably exercised the right of stopping the goods *in transitu.*

REPLEVIN of 771 barrels of cement attached by the defendant, as a deputy of the sheriff of Suffolk, on a writ against

a firm doing business in Boston under the name of Downing & Co.  At the trial in the Superior Court, before *Wilkinson*, J., it appeared that the plaintiff had sold the cement to Downing & Co., and claimed the right to stop it *in transitu*, on account of the insolvency of Downing & Co.  The judge reported the case for the consideration of this court.  If, upon the evidence reported, there was any question for the jury, the case was to stand for trial; otherwise, judgment was to be entered for the plaintiff or the defendant, as the court might order.  The case appears in the opinion.

*W. C. Williamson*, for the plaintiff.

*G. W. Morse*, for the defendant.

MORTON, J.  The report in this case is in some respects irregular.  It sets out the evidence given at the trial, which upon some points is conflicting.  If these points were material, we could not consider them, but the only proper course would be to discharge the report and have the conflicting evidence submitted to a jury.  But, upon a careful examination of the report, we are satisfied that sufficient undisputed facts are disclosed to enable us to determine the rights of the parties.

By a familiar rule of law, a vendor of goods has the right, in case of the insolvency of the buyer, to stop the goods *in transitu*, while they remain in the hands of a carrier.  He may exercise this right at any time before the goods come into the possession of the buyer.  *Mohr* v. *Boston & Albany Railroad*, 106 Mass. 67, and cases cited.

By the term "insolvency" of the buyer is meant his inability to pay his debts in the usual course of business.  It is not necessary that he should have been adjudicated a bankrupt or insolvent debtor.

In the case at bar, the plaintiff sold the replevied goods to Downing & Co. to be paid for upon their delivery in Boston, either in cash or in the notes of the buyers.  They were shipped at New Haven for Boston under a bill of lading by which they were to be delivered to Downing & Co., they paying freight therefor.  Before the vessel arrived at Boston, the notes of Downing & Co. "went to protest, and they have not paid them since," and the officers of the plaintiff corporation, having learned "that Downing & Co. had failed in business," sent an

agent to Boston for the purpose of stopping the goods *in transitu*.

We understand the statement in the report, that the notes of Downing & Co. " went to protest, and they have not paid them since," to mean that their notes were protested because of their inability to pay them in the usual course of business. This was such insolvency of the buyer, within the rule above stated, as authorized the vendor to exercise his right of stoppage *in transitu*.

It appears that the vessel arrived in the harbor of Boston on November 13, and, on the same day, was visited by the agent of the plaintiff. It is not necessary to consider whether what the agent did on that day amounted to a stoppage *in transitu*. The testimony upon this point is conflicting. But this is not material, because it is clear that on November 15, he, on behalf of the plaintiff, demanded the goods, and forbade their delivery to Downing & Co. Up to this time, and indeed up to the time the goods were replevied, they had not come to the possession of the buyers. Downing & Co. had not paid or tendered the freight, the goods had not been removed from the vessel, but were in the hands of the captain as a carrier. Thus all the facts appear which are necessary to give the vendor the right to assert its lien on the goods by stopping them *in transitu*, and the acts of the agent, and the bringing of the replevin suit by him, were an exercise of that right.

The fact that the goods were attached by a creditor of the buyer, on November 13, is immaterial. Such attachment, before the transit is at an end, will not defeat the right of the vendor. *Naylor* v. *Dennie*, 8 Pick. 198. *Seymour* v. *Newton*, 105 Mass. 272.

The defendant contends that the agent of the plaintiff, who stopped the goods *in transitu* and caused the replevin suit to be brought, was not duly authorized. It is not necessary to discuss this question, because the subsequent ratification of his acts by a vote of the directors cured any defect in his original authority, if there was any. It is to be observed that such ratification was before the buyer or his assignee had obtained possession of or made any demand for the goods, and thus the question decided in *Bird* v. *Brown*, 4 Exch. 786, is not raised in this case.

For these reasons we are of opinion that, upon the facts appearing in the report which are undisputed, the plaintiff has shown a right to maintain this action.

*Judgment for the plaintiff.*