## BREWER LUMBER COMPANY *vs.* BOSTON AND ALBANY RAILROAD COMPANY.

Suffolk.    March 11, 1901. — June 1, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Sale,* Stoppage *in transitu,* Whether transit has terminated.  *Payment,* Acceptance of promissory note.

The right of stoppage *in transitu* can be exercised as long as the goods are in the hands of the carrier either *qua* carrier or as warehouseman.  The transit does not terminate until the goods are in the possession, actual or constructive, of the purchaser, and the purchaser is not in or entitled to possession until he has discharged the carrier's liens, unless the carrier makes an agreement with the purchaser to hold the goods as his bailee or agent.

The rule in Massachusetts, in simple contract debts, is, that a promissory note given by a debtor to his creditor is presumed to be a payment, and the presumption is one of fact, which may be rebutted and controlled by evidence that such was not the intention of the parties.  *Semble,* that there is never a presumption that a note is intended to operate as payment in case of the insolvency of the maker before it is negotiated.

The right of stoppage *in transitu* may be exercised in spite of the fact that the vendor has accepted the purchaser's promissory note and receipted his bill for the goods, if he produces the note in court and tenders it to the maker's assignee and trustee in bankruptcy.  It is immaterial that the note was indorsed by the plaintiff to a bank for collection or was discounted by the bank, if the plaintiff has the note in his possession at the commencement of the suit and tenders it at the hearing.

REPLEVIN for a car load of lumber sold by the plaintiff to one George A. Paul and claimed by right of stoppage *in transitu,* the action being defended by the trustee in bankruptcy of Paul.    Writ dated August 30, 1898.

In the Superior Court the case was tried without a jury before *Richardson,* J., who found for the plaintiff, and, with the assent of both parties, reported the case for the determination of this court.    The terms of the reservation, as well as all the material facts and rulings, are stated in the opinion of the court.

*F. Paul, (F. F. Haskell* with him,) for the defendant.

*E. N. Hill,* for the plaintiff.

LATHROP, J.    This case comes before us in a somewhat unsatisfactory manner.    It is a report of a justice of the Superior

Court, before whom the case was tried without a jury. The report sets forth certain facts, certain evidence and requests for rulings by both parties, which were passed upon, and a general finding for the plaintiff, without any findings of specific facts. The report concludes as follows : " Upon the foregoing evidence the court found for the plaintiff, and now, with the assent of both parties, reports the case for the determination of the Supreme Judicial Court, both parties agreeing that if upon the foregoing evidence the rulings and refusals to rule and finding were right, judgment is to be entered for the plaintiff in accordance with the finding; otherwise, judgment is to be entered for the defendant." The word " evidence " is shown by another paragraph in the report to include statements of facts, documentary evidence and testimony of witnesses. As this is an action at law, the only question can be whether the evidence warranted the finding. We have no right, if the testimony of witnesses is conflicting, to decide the case upon a view of the testimony which we might take, if the evidence were before us for our decision.

The action is replevin of a car load of lumber sold by the plaintiff to George A. Paul, a lumber dealer at Boston, and forwarded by the plaintiff over the defendant's railroad from East Saginaw, Michigan, to him. The plaintiff claimed the lumber by reason of the exercise of the right of stoppage *in transitu;* and the action was defended by the trustee in bankruptcy of Paul.

The lumber was sold on January 26, 1898, for the sum of $678.28, Paul to pay the freight, and to deduct it from the amount of the invoice. The terms of the payment were to be two per cent off for cash, if paid within ten days, or a three months' note from date of invoice. On January 31, 1898, the lumber was duly shipped, consigned to Paul, and the invoice forwarded to him. On February 19, 1898, the lumber arrived at the Huntington Avenue yard of the defendant in Boston, and Paul was notified of the fact by the agent of the defendant, by a postal card, which, in addition to the notice of the arrival of the car, contained the following: " If not unloaded within ninety-six hours from February 19, six o'clock P. M. of this date, Sundays and legal holidays not included, the freight will

be subject to storage charges, as per rules of the Massachusetts and the New Hampshire Car Service Association." On March 4, 1898, the defendant stored the lumber in one of its sheds at its Huntington Avenue yard, and notified Paul of the fact. On March 10, 1898, Paul sent a promissory note for $300, dated the same day, and payable to the plaintiff's order at any bank in Boston. This note was indorsed by the plaintiff payable to order of Second National Bank, and under the name of the plaintiff were the letters "B. D." This note was protested on June 10, 1898. On March 11, 1898, the plaintiff sent a letter to Paul, stating that it had placed the $300 note to his credit, and calling his attention to the fact that the date of the note, March 10, was not in accordance with the contract, which called for a three months' note from the date of the invoice, and requested a settlement for the balance. On March 26, 1898, Paul sent the plaintiff a promissory note for $313.68, dated that day, and payable to the order of the plaintiff at any bank in Boston. This note was indorsed in the same way as the other, and it was protested on June 28, 1898.

These notes, the report states, were sent to the plaintiff in payment for the full value of the lumber, with interest added from the date of the invoice to the dates of the notes, less freight, which was to be deducted from the amount of the invoice. On receipt of the second of the notes, the plaintiff sent to Paul a statement of account, dated January 31, 1898, stating the terms of sale, the items of the lumber, and the amount due less freight, being $607.61. Across the face of the paper was written "Received settlement as follows: —

"3 mos. note from March 10 /98          $300.00
"3 mos.   "      "      "    28 /98           313.68
                                          ————
                                          613.68 "

This paper also contained a request for the freight receipt, which was not sent, nor was the freight paid by Paul.

On April 9, 1898, Paul made a common law assignment of all his property for the benefit of his creditors, and the assignee accepted the trust. The plaintiff was notified of the assignment, and a representative of the plaintiff attended the first meeting of

Paul's creditors. On April 16, 1898, the plaintiff gave notice to the defendant not to deliver the lumber to Paul, and requested the defendant to keep it on storage for it, claiming the right of stoppage *in transitu*.

On July 27, 1898, the plaintiff's attorney tendered the notes of March 10 and March 28 to Paul's assignee, who refused to receive them; and at the trial of this case they were again tendered and refused.

This action was brought on August 30, 1898, and before obtaining the lumber the plaintiff was obliged to pay the defendant its claim for freight and storage.

We find it unnecessary to state the testimony of witnesses at this point, though we shall refer to some of it hereafter.

There being no contention that Paul was not insolvent, the principal questions of law in the case are whether the transit had ended, and what the effect was of giving and receiving the notes.

1. As to the first question, we are of opinion that the transit was not ended when the plaintiff asserted its right to the lumber. It makes no difference whether the goods are in the hands of the carrier *qua* carrier, or whether he puts them at the journey's end in a warehouse. In other words, the transit does not terminate until the goods arrive in the possession actual or constructive of the purchaser. *Seymour* v. *Newton*, 105 Mass. 272, 275. *Mohr* v. *Boston & Albany Railroad*, 106 Mass. 67. *Durgy Cement & Umber Co.* v. *O'Brien*, 123 Mass. 12. *Inslee* v. *Lane*, 57 N. H. 454. So long as the carrier or a warehouseman acting for him is in possession of the goods, he has a lien for the freight or other charges. The purchaser is not in possession or entitled to possession until he discharges the liens, and the right of stoppage *in transitu* remains. See Benjamin on Sales, (7th Am. ed.) 915, (2), and cases cited.

While the position of the carrier may be changed to that of bailee or agent for the purchaser of the goods, yet that is a question of an agreement between the carrier and the purchaser. *Jackson* v. *Nichol*, 5 Bing. N. C. 508. *James* v. *Griffin*, 2 M. & W. 623. *Ex parte Barrow*, 6 Ch. D. 783. *Ex parte Cooper*, 11 Ch. D. 68. *Kemp* v. *Falk*, 7 App. Cas. 573, 584. *McLean* v. *Breithaupt*, 12 Ont. App. 383. *Calahan* v. *Babcock*, 21 Ohio St.

281. *Jeffris* v. *Fitchburg Railroad,* 93 Wis. 250. *Symns* v. *Schotten,* 35 Kans. 310.

In the case before us an attempt was made by the trustee in bankruptcy to show that such an agreement was made, but the testimony of Paul falls far short of this. He testified that within a few days after receiving the postal card of February 19, he telephoned to the defendant to store the lumber. He was then asked, " What did they say to you? " and his answer was: " ' All right,' or something to that effect." He was then asked, " Will you say that they said anything? " and answered : " They probably said, ' All right.' They might say, ' Yes, all right,' or something like that." He was again asked, " What did they say ? " and answered, " I don't know." On re-direct examination he testified that he did not know whether he received any reply to his telephone message, and, in answer to the next question but one, testified that he did receive a reply. It seems to us that the judge might well disregard this testimony as too uncertain and vague for consideration. But if it was to be taken into consideration, the testimony of Turner, the freight agent of the defendant in charge of the Huntington Avenue yard, was contradictory to that of Paul. He testified that he remembered the car of lumber, and stored it in the ordinary course of business ; and that he received no directions from any one to store it. If the testimony of Paul can be said to contradict this, it was for the judge sitting without a jury to decide what the fact was.

We are therefore of opinion that the judge rightly refused to rule, as requested by the defendant, that the plaintiff had lost the right of stoppage *in transitu,* or had not seasonably exercised that right.

It follows, from what we have said, that the third ruling given at the request of the plaintiff was correct. This ruling was as follows : " The storage of the lumber in question by the defendant, whether according to the custom of storing after the expiration of the limit of time set forth in the notice given by the defendant to the consignee, or in accordance with the notice to store given by the consignee, does not terminate the transit, without evidence of the attornment by the defendant to the consignee, or an agreement to hold as the agent of the consignee."

The fourth ruling given was as follows: " The existence of the defendant's lien for the unpaid freight raises the presumption that the defendant continued to hold the merchandise as carrier, and in order to rebut this presumption there must be some proof of some agreement or arrangement between the defendant and Paul, whereby the defendant, while retaining its lien, became the agent of Paul to keep the goods for him."

While we do not think that this ruling is well expressed, we are of opinion that no harm was done in giving it. We have already stated the law bearing on this subject, and need not repeat it. The undisputed facts in the case showed that the defendant was holding the lumber for the freight and other charges; and it made no difference whether the goods remained in the car or in the warehouse, unless there was proof of some agreement or arrangement, whereby the defendant became the agent of Paul. Taking the ruling as a whole, we are of opinion that it means no more than this.

2. The next question is as to the effect of the giving of the notes. The instructions requested by the defendant on this point are the first and second, and are as follows:

" 1. If the consignee, intending to pay for the lumber according to agreement, gave to the plaintiff his negotiable promissory notes, dated at Boston, Mass., and payable on time at said Boston, and thereupon the plaintiff receipted its bill for the lumber, and there was no agreement that said notes were accepted as conditional payment, then the law presumes that such notes were given and accepted as absolute payment, and in that case the plaintiff is not an unpaid vendor and has no further right on the lumber, and must seek his remedy on the notes.

" 2. The notes constituted a contract to be construed according to the law of Massachusetts. It is the law of Massachusetts that a negotiable promissory note, given in payment of an obligation, is to be deemed to be given and taken as absolute payment of such obligation in the absence of evidence that the parties intended it to operate only as a conditional payment."

On these requests the judge ruled " that while the rules of law in the 1st and 2d requests were correct as general statements, they did not, on the evidence, require a finding for the defendant."

The rule in Massachusetts, in simple contract debts, is that a promissory note given by a debtor to his creditor is presumed to be a payment; that the presumption is one of fact and not of law, which may be rebutted and controlled by evidence that such was not the intention of the parties.

In *Curtis* v. *Hubbard*, 9 Met. 322, 328, it is said by Chief Justice Shaw: "The rule adopted in Massachusetts, that a negotiable promissory note, given for a simple contract debt, shall be deemed payment, is to be taken with considerable qualification. It is founded on the consideration, that when a note is given for goods, even if it is not negotiated, it is equally convenient to the creditor (and generally more so) to sue on the note, as on the original consideration, and so there is no reason for considering the original simple contract as still subsisting and in force; and therefore a presumption arises, that it was intended by the parties that the note should be deemed a satisfaction. But this is a presumption of fact, which may be rebutted by evidence showing that it was not so intended; and the fact, that such presumption would deprive the party who takes the note of a substantial benefit, has a strong tendency to show that it was not so intended."

In a late case the reason of the rule was stated to be for the protection of the debtor, who might otherwise be compelled to pay both the note and the debt, and it is further said: "But full protection is given to him if, in the proceedings to enforce the original debt, it is shown that he has not paid the note, and that it is then owned by the creditor, and if it is surrendered in court for the benefit of the maker." *Davis* v. *Parsons*, 157 Mass. 584, 588.

It is obvious that the rule can have little or no application, where a person has a lien, which is a valuable right, and that the court would be slow to deprive a lien creditor of the right to enforce his claim on the ground that he had taken a worthless negotiable promissory note, where the note was produced at the trial and tendered to the maker or to his representative, whether the above-mentioned reasons for the rule are the final ones or not.

Thus in *Arnold* v. *Delano*, 4 Cush. 33, a vendor's lien at common law was enforced, notwithstanding a promissory note was given, and also a receipt for the price; and it was said by

Chief Justice Shaw that a lien for the price is incident to the contract of sale; that when a credit is given, the vendee has a right to take possession of the goods, and if he does so the lien is gone. It was then added: "But the law, in holding that a vendor, who has thus given credit for goods, waives his lien for the price, does so on one implied condition, which is, that the vendee shall keep his credit good. If, therefore, before payment, the vendee become bankrupt or insolvent, and the vendor still retains the custody of the goods, or any part of them; or if the goods are in the hands of a carrier, or middleman, on their way to the vendee, and have not yet got into his actual possession, and the vendor, before they do so, can regain his actual possession, by a stoppage *in transitu;* then his lien is restored, and he may hold the goods as security for the price." In respect to the contention that the note was payment, it was said: "We think the answer is, that a promissory note, even if in form negotiable, whilst it remains in the hands of the vendor and not negotiated, but ready to be delivered up on the discharge of the lien, is regarded as the evidence in writing of a promise to pay for the goods purchased, and does not vary the rights of the parties."

If this is true of a vendor's lien, it is equally true of the right of stoppage *in transitu,* which is merely an extension of the vendor's lien. *Grout* v. *Hill,* 4 Gray, 361, 366, per Shaw, C. J. See also 1 Pars. Mar. Law, 340, and cases cited in n. 2.

In *Seymour* v. *Newton,* 105 Mass. 272, the goods were to be paid for by a draft at three days' sight. The draft was accepted but was not paid, and it was held that neither the acceptance of the draft, nor the sending to the purchasers of an account, in which they were credited with the draft, prevented the plaintiffs from stopping the goods *in transitu.* To the same effect is *Mohr* v. *Boston & Albany Railroad,* 106 Mass. 67. See also *Re Batchelder,* 2 Lowell, 245, 248.

There is some contention on the part of the trustee in bankruptcy that the notes were negotiated. There was no evidence in the case to show the meaning of the letters "B. D.," and the fact that the notes were indorsed by the plaintiff to the order of the Second National Bank is not important. Whether they were sent to that bank for collection or were discounted by it is immaterial. They were not paid by Paul, and were tendered by

the plaintiff to the common law assignee, and to the trustee in bankruptcy. The facts that the plaintiff was then in possession of the notes and tendered them is all that is required. *Davis* v. *Parsons*, 157 Mass. 584, 588.

It follows that the second ruling requested by the plaintiff, as modified by the judge, was rightly given. This ruling so modified was as follows : " That the giving of the two notes in payment for the lumber according to the agreement, while in form negotiable does not prevent the right of stoppage *in transitu*, as they remained in the hands of the vendor, and ready to be delivered up."

Nor do we regard it of importance that on receipt of the last note the plaintiff sent to Paul a statement of the account between them. The report does not show that this statement was signed by the plaintiff. But, if it were so signed, the case would stand no stronger for the defendant than if the statement had been " Received payment by two notes." Then the case would have fallen within the case of *Arnold* v. *Delano*, 4 Cush. 33, 34. See also *Seymour* v. *Newton*, 105 Mass. 272, 273.

<div align="right">

*Judgment for the plaintiff.*