WILLIAM C. COLEMAN *vs.* NEW YORK, NEW HAVEN, AND
HARTFORD RAILROAD COMPANY.

Suffolk.      January 15, 1913. — May 24, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Conversion,* Evidence of right of possession. *Bill of Lading. Evidence,* Presumptions and burden of proof. *Practice, Civil,* Ordering verdict. *Sale,* Stoppage *in transitu. Carrier. Damages,* In contract. *Contract,* Validity.

In an action against a carrier for an alleged conversion of goods, if it appears that the plaintiff was named as consignee in the bill of lading of the goods and that he had possession of the bill of lading, this is evidence of the plaintiff's right to the immediate possession of the goods.

In an action of contract, where a substantial part of the evidence is oral or consists of inferences to be drawn from the circumstances shown, it seldom can be ruled that the party on whom the burden of proof rests is entitled to a verdict. The present case gave no occasion for such an exceptional ruling.

In an action by the consignee of goods against a carrier for their alleged conversion, where it appears that the carrier returned the goods to the consignor, who claimed the right of stoppage *in transitu,* if there is evidence that after the arrival of the goods at their destination the plaintiff on two occasions examined them in the hands of the defendant and took samples from them, that upon demand from the defendant he paid the freight and storage charges on the goods up to the date of such payment but left the goods in the hands of the defendant and failed to pay the consignor for them or to pay the defendant further storage charges, the question whether the transit had been terminated by a constructive delivery of the goods to the consignee, so that the right of stoppage *in transitu,* if it existed, had been lost, is a question of fact for the jury.

The insolvency of a consignee of goods which is necessary to give the consignor the right of stoppage *in transitu* need not be shown by proof of adjudication, but consists simply of inability to pay debts in the usual course of business, and may be proved as a rational inference from convincing facts and circumstances. In the present case evidence that, after several failures on the part of the consignee to pay for the goods upon demands by the consignor, a draft on the consignee by the consignor for the price of the goods, through a bank at the residence of the consignee, was returned to the consignor with notice that the consignee was out of the city, was held to be evidence for the jury of the insolvency of the consignee.

A provision in a bill of lading of goods sent by rail, that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee . . .)" is not contrary to public policy, and, in an action against a carrier for the breach of a contract to deliver the goods shipped under such a bill of lading, where the contract of carriage is not repudiated by the carrier, this limitation of the damages that can be recovered is valid and enforceable.

Rugg, C. J. This is an action to recover the value of goods. The material facts are that in July, 1909, the plaintiff agreed to purchase from the Lake Shore Rubber Works fifty-five bales of scrap packing weighing forty-four hundred pounds, the invoice price being two and one half cents per pound. The packing was shipped by the Lake Shore Rubber Works, consignor, from Erie, Pennsylvania, to William C. Coleman Company,* consignee, Boston, Massachusetts. A bill of lading was issued by the initial carrier and sent by the consignor to the plaintiff. The consignment reached Boston on July 12, and the plaintiff was notified by the defendant who was the final carrier. Soon after the plaintiff went to the freight house of the defendant, examined the goods, and on two occasions, the dates of which are not fixed in the report, took samples. On September 20 he paid the freight and storage charges to that date. On November 5 the defendant sent a notice to the plaintiff to the effect that storage charges were running against the consignment, and requesting disposition of the goods. In October, 1909, the consignor drew on the plaintiff by draft on a Boston bank, which was returned to the consignor with notice that the plaintiff was out of the city. On several earlier occasions demand for payment was made on the plaintiff, but he has never paid for the goods. Late in November, 1909, the consignor requested the initial carrier to return the consignment to it, and on November 29 the defendant on demand by it returned the goods to that carrier, which delivered them to the consignor. In the latter part of February or early in March, 1910, the plaintiff demanded the goods of the defendant. There were four counts in the declaration, the first and second being for a conversion, and the third and fourth for breach of contract. The first and fourth counts described the property which is the subject of the action as: thirteen hundred ninety-seven pounds of piston packing, fifteen hundred fifty-three pounds of hydraulic packing, seven hundred fifty-seven pounds of mixed packing, and seven hundred and four pounds of special packing, while the second and third counts described the property as fifty-five bails of rubber packing. At the close of the evidence, the defendant requested that a verdict be directed in its favor on all the

---

\* This was the name under which the plaintiff did business.

evidence and on each of the counts, and made other requests for rulings, all of which were refused. Upon this evidence (which is stated to be all that is material) the presiding judge* instructed the jury that the plaintiff was entitled to recover, and left for determination by the jury only the fair market value of the goods.

1. The defendant has argued at length that there was no sufficient evidence that the plaintiff was the owner of the goods. But this contention is not sound. The plaintiff was named as consignee in the bill of lading. This was some evidence of title. *Rosenbush* v. *Bernheimer*, 211 Mass. 146, 149. Possession of the bill of lading in which the plaintiff was named consignee was at least evidence of right to immediate possession of the goods. The question is not presented whether the contract for the sale of fifty-five bales of scrap packing was complied with by the delivery of such property as was described in counts one and four. The evidence is not reported on this point, and hence one cannot say that it ought to have been ruled either that the plaintiff was not the owner or that the proof did not correspond with the allegations.

2. But on the other hand it could not have been ruled as matter of law that the plaintiff was the owner or entitled to possession, which was the effect of the direction of a verdict. The burden of proof in this respect was on the plaintiff. Where one party has the burden of establishing certain facts affirmatively, and a substantial part of the evidence offered is either oral or consists of inferences to be drawn from circumstances, it is rarely that it can be ruled as matter of law that the party upon whom rests the burden of proof is entitled to a verdict. The present is not such a case.

As the case must go back for another trial we consider such questions as are likely to arise then, which are raised on this record.

3. The question of difficulty is whether the transit was at an end as matter of law, so that the vendor's right of stoppage *in transitu* was gone. The abstract statement of the law in this particular has been so thoroughly considered that it is not now

---

* *Aiken,* C. J.   The defendant alleged exceptions.

open to doubt. The right of stoppage *in transitu* is one favored by commercial law. It endures so long as the goods remain in the possession of the carrier by virtue of the contract of carriage and until there has been an actual or constructive delivery to the consignee. No controversy ordinarily can arise when there has been an actual delivery. A constructive delivery may be found when the carrier has recognized the title of the consignee, has attorned to him and has agreed to hold the goods "not merely as carrier or as a warehouseman pending a complete delivery to the purchaser, but as agent for the purchaser under a new contract made and assented to by both the carrier and the purchaser." *Norfolk Hardwood Co.* v. *New York Central & Hudson River Railroad,* 202 Mass. 160, 162. *Brewer Lumber Co.* v. *Boston & Albany Railroad,* 179 Mass. 228. It was said in *Whitehead* v. *Anderson,* 9 M. & W. 518, at 534, 535: "Where the carrier enters expressly or by implication, into a new agreement, distinct from the original contract for carriage, to hold the goods for the consignee as his agent, not for the purpose of expediting them to the place of original destination, pursuant to that contract, but in a new character, for the purpose of custody on his account, and subject to some new or further order to be given to him," then constructive possession is in the vendee, and the transit is at an end. To the same point see *Ex parte Cooper,* 11 Ch. D. 68; *Bethell* v. *Clark,* 20 Q. B. D. 615; *Lyons* v. *Hoffnung,* 15 App. Cas. 391, 397 It could not have been ruled rightly as matter of law that under these principles of law the transit in the case at bar was ended. All that had occurred was the arrival of the goods in Boston and two notices, alike in tenor, sent by the carrier to the consignee, and payment of the charges up to a certain time. It is not certain that the consignee had accepted the goods. After paying the freight charges, if his testimony is taken literally, he had examined the bales at least once for the taking of samples. The purpose of this is not disclosed, but it is not inconceivable that it may have been to ascertain whether the goods corresponded with the terms of the contract of sale to him. The payment of freight is not a decisive evidence of the termination of the transit. *Naylor* v. *Dennie,* 8 Pick. 198. *Reynolds* v. *Boston & Maine Railroad,* 43 N. H. 580.

4. The question whether the consignor had the right of stop-

page *in transitu* was one of fact upon all the evidence, and not properly one of law. This right of an unpaid vendor to enforce his lien by possessing himself of goods, whereof the purchaser has acquired the title but not the possession, can be exercised only when the buyer is insolvent. By insolvency in this connection is meant not an adjudication by a court of competent jurisdiction, but simply inability to pay debts in the usual course of business. Such inability need not be absolute. It may be proved as a rational inference from convincing facts and circumstances. A business man in good standing commonly meets his obligations at maturity. A failure to pay a single debt might occur under such conditions as to constitute persuasive evidence of general inability to pay one's debts. *Lee* v. *Kilburn,* 3 Gray, 594, 599, 600. *Durgy Cement & Umber Co.* v. *O'Brien,* 123 Mass. 12, 13. *Peabody* v. *Knapp,* 153 Mass. 242. *Jeffris* v. *Fitchburg Railroad,* 93 Wis. 250. Williston on Sales, § 522, and cases there cited. There were circumstances in the case at bar tending to throw such doubt upon the solvency of the plaintiff as to require the submission of that question to the jury.

5. If upon a new trial it should be found that the transit had not ended and yet the plaintiff was not insolvent so that the vendor had no right of stoppage *in transitu,* the measure of damages may become important. The bill of lading contained the condition that "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee . . . )." It was a reasonable contract to base the damages to be recovered in case of loss upon the genuine and honest invoice price between the parties. There is nothing contrary to public policy in such a contract. It comes within the principle declared in *Bernard* v. *Adams Express Co.* 205 Mass. 254, which has been adopted in *Adams Express Co.* v. *Croninger,* 226 U. S. 491, as applicable to interstate commerce under federal statutes. If the plaintiff at a new trial shows himself entitled to recover for breach of the contract to deliver under the bill of lading he must be limited in damages to the amount therein stipulated. It is only when the contract of carriage is repudiated by the carrier that the limitation as to value of the goods

is abrogated.    *McKahan* v. *American Express Co.* 209 Mass. 270.

*Exceptions sustained.*

*E. S. Kochersperger*, for the defendant.

*N. Samsel*, for the plaintiff, submitted a brief.