## C. C. C. & ST. L. RY CO v M. DEGARO CO

Ohio Appeals, 1st Dist, Hamilton Co.

No 3633. Decided April 14, 1930

H. N. Quigley, C P. Stewart, and Harmon, Colston, Goldsmith & Hoadley, all of Cincinnati, for Ry.

Hightower, O'Brien & Porter, Cincinnati, for DeGaro Co.

ROSS, J:

For convenience we will refer to those involved as follows:

The Perham Fruit Co., Shipper:
Denney & Company, Consignee;
The C. C. C. & St. L. Ry., Carrier; and
M. Degaro & Sons, Purchaser.

The Bill of Lading was a straight bill for an interstate shipment, and, under the Federal Bill of Lading Act, United States Code, Title 49, Chapter 4, section 109, cannot be negotiated free from existing equities, and the endorsement of such bill gives the transferee no additional right.

The purchaser, therefore, by taking up the draft and delivery order, obtained no greater rights than the original consignee; nor did the payment of freight charges confer any right upon the purchaser additional to that possessed by the consignee, especially as all of these acts were performed subsequent to the receipt by the carrier of the notice to stop.

The position of the carrier is, that it was justified in refusing delivery to the purchaser, because previous to actual or constructive delivery to the consignee it had received notice of stoppage in transitu from the shipper, justified by the insolvency of the consignee.

The position of the purchaser is, that the rebilling and diversion at Laramie, Wyoming, from original destination under the instructions of the consignee, was a constructive delivery to the consignee and terminated the transit and the right of the shipper to stop delivery.

"The rights and liabilities of the parties to an interstate railway shipment depend upon Federal legislation, the bill of lading, and common-law rules as accepted and applied in Federal tribunals." Cincinnati, New Orleans & T. P. Ry. Co. v Rankin, et al., 241 U. S. 319; (1917 A. L. R. A., p. 265, syllabus 2).

The common-law rule applicable to the right of stoppage in transitu had its origin in early English Courts, and has been applied by both Federal and State Courts.

"The doctrine of stoppage in transitu, as established in the United States since their independence, accords in general with the principles of the law of England on the subject. 'The English law,' says Chancellor Kent, 'on the subject of this right, and the class of cases by which it is asserted and established, have been very generally recognized and adopted in our American Courts'." Benjamin On Sales, 5th Ed., p. 390.

There is little conflict in the definition of the general rule but divergence in its application to particular facts.

The rule is as follows:

"One who sells goods on credit to another has the right to resume the possession of the goods while they are in the hands of a carrier or middleman in their transit to the consignee or purchaser and before they arrive into his actual possession or to the destination which has been appointed for them on the purchaser's becoming bankrupt or insolvent." 24 R. C. L., p. 129, section 399. See also: Notes 7 A. L. R. 1374.

In Ohio the rule is stated in Calahan, et al v Babcock, et al., 21 Oh St, 281:

"1. The right of stoppage in transitu is regarded with favor, and the engrafting of further restrictions upon the rule governing it, is not warranted by public policy."

"2. The right of stoppage in transitu is extinguished only by the actual and complete delivery of the goods consigned, to the vendee or to some agent of and for him."

"3. In the absence of an express or implied understanding to the contrary, the employment of a carrier by a vendor of goods on credit, constitutes all middlemen into whose custody they pass agents of the vendor, for their transportation and delivery; until the complete performance of which duty the goods consigned are deemed to be in transitu."

And, on page 293 of the opinion, the Court say:

"Wherefore, until the vendee in person, or his agent under and for him, shall become custodian in possession, neither the transit of the goods nor the vendor's right of stoppage will be held to have terminated."

However,

"As the phrase right of "stoppage in transitu" implies, the right terminates with the transit, and is completely lost by a termination of the transit and an actual or constructive delivery to the buyer. The

courts have frequently recognized the difficulty of laying down specific rules for .determining when . the transit is ended and thereby the seller's right of stoppage." 24 R. C. L., p. 144, section 415.

The question presented by the facts in the instant case is, when did the transit end? Did the diversion order of the consignee terminate the transit of the goods from the shipper to the consignee? It has been held that even a reconsignment of a shipment and the taking up of the original bills of lading and issuance of new bills, will not interrupt the transit when the shipment is still moving **to the consignee** or his agent. In Re Nesto, 270 Fed. 503. Cashmore Fruit Growers' Union v Great Northern Ry Co., 270 Pac. 1038.

These cases have applied the rule to extend the transit through what most courts consider ·a constructive delivery—that is a surrender of the bills of lading accompanied by a new contract of carriage. It is apparent from the authorities quoted hereinafter that some definite agreement must be reached by the consignee and carrier which completely **terminates** the original contract. of carriage, is an assumption of the right to possession by the consignee, and clearly causes the carrier to assume a new relationship to the consignee, other than a carrier **from the shipper to the consignee.** Some authorities consider the carrier as agent of the shipper. Others hold the carrier as agent of the consignee, but the effect is the same.

"The right to stop the goods may be determined, not simply by delivery to the buyer, but by an attornment of the bailee to the buyer. The nature of the attornment necessarily must be carefully observed At the time when a carrier first receives goods consigned to the buyer the carrier is agent for the buyer, and subsequent recognition of this agency by the carrier in a statement or letter to the buyer would not, it seems, terminate the seller's right to stop. **In order to have that effect the attornment must be a recognition of an agency other than one of carrying out the transit between seller and buyer.".** Williston on Sales, Vol. 2, 2nd Ed., section 528, p. 1340.

"As to the first question, we are of opinion that the transit was not ended when the plaintiff asserted its right to the lumber. It makes no difference whether the goods are in the hands of the carrier qua carrier, or whether he puts them at the journey's end in a warehouse. In other words, the transit does not terminate until the goods arrive in the possession actual or constructive of the purchaser. Seymour v Newton, 105 Mass. 272, 275. Mohr v Boston, & Albany Rd, 106 Mass. 67. Durgy Cement & Lumber Co. v O'Brien, 123 Mass. 12. Inslee v Lane, 57 N. H. 454. So long as the carrier or a warehouseman acting for him is in possession of the goods, he has a lien for the freight or other charges. The purchaser is not in possession or entitled to possession until he discharges the liens, and the right of stoppage in transitu remains. See Benjamin on Sales, (7th Am. ed.) 915, (2), and cases cited.

"While the position of the carrier may be changed to that of bailee or agent for the purchaser ' of the goods, yet that is a question of an ·agreement between the carrier and the purchaser. Jackson v Nichol, 5 Bing. N. C. 508. ·James v Griffen, 2 M. & W 623. Ex parte Barrow, 6 Ch. D. 783. Ex parte Cooper, 11 Ch. D. 68. Kemp v Falk, 7 Ap. Cas. 573, 584. McLean v Breithaupt, 12 Ont. Ap. 383. **Callahan v Babcock, 21 Oh St, 281.** Jeffris v ' Fitchburg ' Railroad, 93 Wis. 250. Symns v Schotten, 35 Kans. 310." Brewer Lumber Co. v Boston & Albany R. R. Co., 179 Mass., 228, 231, 232.

"There has (as observed by Chancellor Kent, 2 Com. 545), been much subtlety and refinement on the question as to the facts and circumstances which would amount to a delivery, sufficient to take away the right; and there is certainly much danger of being lost amid these subtleties and refinements, unless the principle be adhered to that the intermediate act of the vendee, which is to be deemed sufficient to terminate the transitus, must be such as produces an actual and substantial or physical effect upon the condition and destination of the goods." Secumb, Voorhies & Co. v Nutt, etc.. XIV B. Monroe, 53 Ky. 261, p. 264.

The admitted facts in this case are, that the car of apples was still in the hands of the carrier when the notice to stop was given. It was still in the course of transit from the shipper to the consignee, although it had arrived at its new destination. The diversion order effected at Laramie, Wyoming, did not interrupt the continuing transit of the car from the shipper **to the consignee;** the destination was changed, but the carrier's relation to the consignee remained unchanged, it was still carrying the original shipment **to him.** The original transit had not ended.

Upon the facts as set forth in the pleadings, the judgment should have been for the carrier, and judgment may be entered here for the palintiff in error, the judgment

of the Court of Common Pleas being reversed.

CUSHING, PJ, and HAMILTON, J, concur.